**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TERATECH, CORP. d/b/a TERASON,<br><br>Plaintiff,<br><br>v.<br><br>MINDRAY BIO-MEDICAL ELECTRONICS CO. LTD. d/b/a MINDRAY GLOBAL and MINDRAY DS USA, Inc. d/b/a MINDRAY NORTH AMERICA<br><br>Defendants. | C.A. No. 25-1149-MN<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS MINDRAY BIO-MEDICAL ELECTRONICS CO. LTD. AND MINDRAY
DS USA, INC.'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
<u>PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM</u>**

Dated:  December 23, 2025

Susan E. Morrison (#4690)
Grayson P. Sundermeir (#6517)
Taylor Reeves (#6900)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel: 302-652-5070
morrison@fr.com; sundermeir@fr.com;
reeves@fr.com

Frank E. Scherkenbach
Jeffrey Shneidman
Qiuyi Wu
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
(617) 542-5070
scherkenbach@fr.com; shneidman@fr.com;
qwu@fr.com

Jeremy T. Saks
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
(212) 765-5070
saks@fr.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS .................................................... 2

III.  SUMMARY OF ARGUMENT ................................................................................... 2

IV.   STATEMENT OF FACTS ........................................................................................... 3

      A.    Facts Relating to Alleged Willful Infringement ............................................. 4

      B.    Facts Relating to Teratech's Failure to Plausibly Allege Infringement .................... 4

V.    APPLICABLE LEGAL STANDARDS ...................................................................... 9

      A.    Rule 12(b)(6) Motion to Dismiss ................................................................... 9

      B.    Willful Infringement ...................................................................................... 9

      C.    Infringement .................................................................................................. 10

VI.   ARGUMENT ............................................................................................................. 10

      A.    Teratech's Willful Infringement Allegations Should be Dismissed Because They
            are Legally Deficient ...................................................................................... 10

            1.    Teratech's Allegations Do Not Plausibly Allege Mindray's Knowledge of
                  the '073, '363, '480, and '023 Patents ........................................... 11

            2.    Teratech Fails to Allege Mindray's Knowledge of the '699 Patent ............ 12

            3.    Teratech Fails to Sufficiently Allege Mindray's Willful Blindness of the
                  Asserted Patents ............................................................................... 14

      B.    The Complaint Should Be Dismissed as to the Patents That Require the Ultrasound
            Device be "Handheld" ..................................................................................... 15

            1.    Teratech Fails to Sufficiently Plead Infringement of Claim 41 of the '073
                  Patent by the TE7 Product ................................................................. 15

            2.    Teratech Fails to Sufficiently Plead Infringement of Claim 41 of the '073
                  Patent by the TEX Product ................................................................. 17

            3.    Teratech Fails to Sufficiently Plead Infringement of Claim 45 of the '699
                  Patent by the TE7 Product ................................................................. 19

VII.  CONCLUSION .......................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aperture Net LLC v. Cambium Networks, Inc.*,
No. CV 21-298-RGA, 2022 WL 605740 (D. Del. Feb. 1, 2022) ....................................14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................9, 14

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021)..................................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................9, 12, 14, 18

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ..................................................................................................10

*Catalina Mktg. Int'l. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002)..................................................................................................19

*Cerebrum Sensor Techs., Inc. v. Revvo Techs., Inc.*,
No. CV 24-245-JLH-SRF, 2025 WL 72110 (D. Del. Jan. 10, 2025)
*report and recommendation adopted*, No. CV 24-245-JLH-SRF, 2025 WL
326647 (D. Del. Jan. 29, 2025).................................................................................................12

*Global–Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011).........................................................11

*Helios Streaming, LLC v. Vudu, Inc.*,
No. CV 19-1792-CFC-SRF, 2021 WL 254069 (D. Del. Jan. 26, 2021)
*report and recommendation adopted*, No. CV 19-1792-CFC-SRF, 2021 WL
1138024 (D. Del. Mar. 25, 2021)..............................................................................................13

*Hills Point Indus. LLC v. Just Fur Love LLC*,
No. 22-cv-1256, 2023 WL 8804046 (D. Del. Dec. 20, 2023) ..................................................10

*iFIT Inc. v. Peloton Interactive, Inc.*,
No. CV 21-507-RGA, 2022 WL 609605 (D. Del. Jan. 28, 2022) ........................................2, 13

*InVue Sec. Prods. Inc. v. Mobile Tech, Inc.*,
No. 3:19-CV-407-SI, 2019 WL 5295464 (D. Or. Oct. 18, 2019)............................................12

*K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*,
714 F.3d 1277 (Fed. Cir. 2013)................................................................................................10

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017).................................................................................................9

ii

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
   No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017) .................................17, 18

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993).................................................................................................9

*Pitney Bowes, Inc. v. Hewlett Packard Co.*,
   182 F.3d 1298 (Fed. Cir. 1999)...........................................................................................19

*Roper v. Jo-Ann Stores, Inc.*,
   211 F. App'x 950 (Fed. Cir. 2007) .......................................................................................15

*Shahin v. Darling*,
   606 F. Supp. 2d 525 (D. Del. 2009).....................................................................................18

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985).............................................................................................13

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
   No. C 11-06638-RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012)......................................12

*Web 2.0 Technologies, LLC v. Accelo, Inc.*,
   No. 23-cv-001-MN, D.I. 17 (D. Del. Oct. 5, 2023) ...............................................................19

*Wilson v. USI Ins. Serv. LLC*,
   57 F.4th 131 (3d Cir. 2023) ...................................................................................................9

*Wrinkl, Inc. v. Facebook, Inc.*,
   No. 20-CV-1345-RGA, 2021 WL 4477022 (D. Del. Sept. 30, 2021)....................................10

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................1, 9

## I.   INTRODUCTION

Even assuming the truth of every allegation in Teratech's Complaint, Teratech has failed to state a claim for willful infringement, and has failed to state a claim for infringement of two of the five Asserted Patents under Federal Rule of Civil Procedure 12(b)(6).  Those claims should be dismissed, narrowing this case and preserving the resources of the parties and the Court.

Teratech's allegations of willfulness fail, as Teratech does not plead facts showing that Mindray had knowledge of the Asserted Patents prior to the filing of this lawsuit.  Instead, Teratech's Complaint relies on tenuous allegations of knowledge related to Mindray's patent prosecution and commercial activities, but those activities concern a Teratech patent application and patents not asserted here.  Because it has failed to properly allege knowledge, Teratech cannot claim that any alleged infringement by Mindray was willful.  Teratech's allegations of willful infringement should therefore be dismissed.

Teratech's allegations of infringement for two of the Asserted Patents similarly fall short. Even assuming the truth of those allegations, Teratech fails to plead facts sufficient to show that Mindray's accused products are "handheld," a claim requirement in two of the five Asserted Patents.  Mindray's cart-mounted ultrasound products are not "handheld" under any reasonable understanding of that term, and Teratech pleads no facts to the contrary.  As to the TEX device, Teratech pleads no facts at all, instead relying entirely on the unsupported assertion that the product is "handheld," when the very evidence Teratech cites in its claim charts shows the opposite to be true.  And as to the TE7 device, Teratech's own allegations state that the product is designed to be mounted, either to a cart, a desktop, or a wall, undermining any assertion that the product is "handheld."  Accordingly, Teratech's allegations of infringement for these two patents should also be dismissed.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On September 15, 2025, Plaintiff Teratech Corp., ("Teratech") filed a Complaint against Defendants Mindray Bio-Medical Electronics Co. Ltd.[1] and Mindray DS USA, Inc. (collectively, "Mindray") alleging infringement of U.S. Patent Nos. 11,675,073 (the "'073 patent"); 12,102,480 (the "'480 patent"); 11,857,363 (the "'363 patent"); 12,115,023 (the "'023 patent"), and 9,877,699 (the "'699 patent") (collectively, "the Asserted Patents").  (D.I. 1).  The Complaint alleges that Mindray's TEX and TE7 ultrasound devices infringe the Asserted Patents.

## III.    SUMMARY OF ARGUMENT

1.      Teratech fails to sufficiently plead that any alleged infringement by Mindray was willful.  Teratech does not plead that Mindray had actual knowledge of or was willfully blind to the Asserted Patents.  Instead, Teratech makes tenuous connections between the Asserted Patents and Mindray's knowledge of unasserted patents or patent applications.  But that is insufficient as a matter of law.  *See iFIT Inc. v. Peloton Interactive, Inc.*, No. CV 21-507-RGA, 2022 WL 609605, at *1-*2 (D. Del. Jan. 28, 2022) ("To plead a claim of willful infringement, the complaint must allege that the accused infringer knew of the patent-in-suit, and knowingly or intentionally infringed the patent after acquiring that knowledge.").

2.      Teratech fails to sufficiently plead infringement of the '073 patent in Counts I and II and the '699 patent in Counts IX and X of its Complaint.  The independent claims of these two patents require that the accused device, as a whole, be "handheld."  Recognizing that the size and configuration of Mindray's devices prohibit their being "handheld," Teratech fails to even plead that Mindray's devices meet this requirement.  Instead, Teratech's claim charts acknowledge that

---

[1] Defendants note that the correct name of the party named in the Complaint as "Mindray Bio-Medical Electronics Co. Ltd. d/b/a Mindray Global" is Shenzhen Mindray Bio-Electronics Co., Ltd.

Mindray's devices are mounted—either to a cart, a table, or a wall in the case of TE7, or integrated with a cart in the case of TEX—and are not handheld:

 

(D.I. 1, ¶¶ 63, 68).  Even accepting all of the allegations in the Complaint as true, neither the TE7 device (left) nor the TEX device (right) could be "handheld" under any reasonable understanding of that term.  Because the accused Mindray products are not "handheld," they cannot infringe any claim of the '073 and '699 patents, and Teratech's allegations as to those patents should be dismissed.

## IV.     STATEMENT OF FACTS

Mindray is a health technology company.  Since its founding in 1991, Mindray has been committed to innovation and advancing technology in a global market, investing a substantial amount of its annual revenue into research and development and employing more than 21,000 individuals worldwide.  Mindray manufactures and sells a wide range of medical device products, including the ultrasound systems that are the subject of this infringement suit.

Teratech's Complaint asserts five patents against two Mindray ultrasound models, the TE7 and TEX models pictured above.  (D.I. 1 ¶¶ 61-69).  The Complaint and charts allege infringement of one claim from each patent: claim 41 of the '073 patent against the TE7 and TEX models (*id*.

3

¶¶ 71-86, Exs. G, H); claim 45 of the '699 patent against the TE7 model (*id.* ¶¶ 135-150, Ex. M); claim 1 of the '480 patent against the TEX model (*id.* ¶¶ 87-102, Ex. I); claim 7 of the '363 patent against the TE7 and TEX models (*id.* ¶¶ 103-118, Exs. J, K); and claim 1 of the '023 patent against the TE7 model (*id.* ¶¶ 119-134, Ex. L).  The Complaint further asserts that Mindray's infringement was willful.

### A.      Facts Relating to Alleged Willful Infringement

Teratech's Complaint makes the bald assertion that Mindray had pre-suit knowledge of the Asserted Patents, (D.I. 1  ¶¶ 31-51), but despite nearly five pages of allegations, contains no facts to show that Mindray had pre-suit knowledge of the '073, '363, '480, and '023 patents, or of any of the applications that subsequently issued as those patents.  (*See id.*)  Instead, Teratech draws tenuous connections between Mindray's patent prosecution and commercial activities and unrelated Teratech patents, and then attempts to apply those connections to the '073, '363, '480, and '023 patents.  For the '699 patent, although Teratech alleges that Mindray cited the application that ultimately issued as the '699 patent during the prosecution of an unrelated Mindray patent, Teratech fails to plausibly allege that Mindray had pre-suit knowledge of the patent itself.  (*See id.* ¶ 44).  Instead, Teratech alleges that during the prosecution of a Mindray patent, "the Examiner cited the Teratech Patent Application Publication No. 20140121524," which ultimately issued as the '699 patent.  But Teratech never alleges that the Examiner or Mindray relied upon that published application or discussed it in any way during prosecution, or that Mindray had any knowledge of the '699 patent after it was issued.  (*See id.* ¶ 44-46.)

### B.      Facts Relating to Teratech's Failure to Plausibly Allege Infringement

Two of the five patents that Teratech asserts against Mindray, the '073 and '699 patents, claim "handheld" medical ultrasound imaging devices. In particular, the relevant excerpt of asserted claim 41 of the '073 patent recites:

41. A **handheld medical ultrasound imaging device** comprising:

at least one handheld transducer assembly to perform an imaging operation wherein the at least one transducer assembly includes a probe housing, a transducer array, and a cable with a first transducer connector; and

a **handheld portable processing unit** connectable to the at least one handheld transducer assembly with the cable and the first transducer connector at a processing unit connector, the processing unit having an integrated touch screen display that displays an ultrasound image wherein the integrated touch screen display is mounted integral with a processor operative in response to the integrated touch screen display, a memory system, a battery…

(D.I. 1, Ex. A at 23:30-58) (emphasis added). Figure 31D of the '073 patent below depicts a preferred embodiment of the claimed ultrasound imaging system, combining the ultrasound module and a notebook computer into a single handheld package, and Figure 31F below specifically depicts how the ultrasound module is situated in the base of the device:



FIG. 31D                FIG. 31F

(*See id*., Ex. A at 18:54-61).[2] That system may also optionally be connected to a dock or console on a cart. (*See id*., Ex. A at 18:65-19:21; Figure 32C).

The '699 patent similarly describes a tablet ultrasound system, and the relevant excerpt of asserted claim 45 recites:

45. A method of operating a **handheld medical ultrasound imaging device**, the medical ultrasound imaging device comprising a transducer probe, a tablet housing, the tablet housing having a front panel, a computer in the housing, the computer including at least one processor and at least one memory, a touch screen display that displays an ultrasound image,…

---

[2] This discussion of the alleged invention of the '073 patent and the following discussion of the alleged invention of the '699 patent are overviews of content discussed and disclosed in the patents, but is not intended to limit the alleged inventions of those patents to any specific embodiment.

(D.I. 1, Ex. E at 41:55-42:11) (emphasis added)). Like the '073 patent, the alleged invention of the '699 patent is shown in Figure 20 below as a preferred embodiment in tablet form with dimensions 12.5"x 1.25"x 8.75", and less than 8 pounds, similar to an iPad. (*See id*., Ex. E at 30:4-16). Figure 21 below shows the tablet ultrasound device may be docked to a cart system:



FIG. 20    FIG. 21

(*See id*., Ex. E at 30:4-16, 30:53-67; 31:27-67).

In contrast to the alleged inventions of the '073 and '699 patents, the accused Mindray TE7 and TEX models are not "handheld" ultrasound devices. As can be seen in the images of the products on page 3, *supra*, the TE7 and TEX devices are cart-mounted ultrasound devices of significant size and weight. In fact, as Teratech's claim charts allege, the Mindray TE7 is mounted to a cart, a desktop, or a wall (*see id.*, Ex. G at 1, Ex. M at 1), and the Mindray TEX device is integrated with a cart (*see id.*, Ex. H at 2, 4). The TE7 and TEX devices are thus like the ultrasound imaging systems the '073 and '699 patents describe as different from the alleged inventions. Those systems may include an ultrasound probe "coupled by cables to a large rack-mounted console processing and display unit," like the TE7 and TEX devices. (*See, e.g*., *id*., Ex. A at 1:17-19; Ex. E at 1:30-48).

6

The Mindray TE7 model is a large ultrasound device with a cart-mounted design:



(*Id.*, Ex. L at 5).  The main unit of the TE7 device, i.e. the screen assembly portion with transducer connectors and holders attached to its backside, can be removed from the cart but must be mounted to a support base, shown below, in order to be used on a desktop:



(*See, e.g.*, *id.*, Ex. G at 2-3).  When detached from the cart, the main unit of the TE7 (including transducer holders) weighs nearly sixteen pounds and has a size of about 5" (depth) x 15" (width) x 15" (height).[3]

---

[3] The Mindray manual that Teratech relies upon in its claim charts is available at, https://www.mindray.com/content/dam/xpace/en_us/service-and-support/training-and-education/resource--library/technical--documents/operators-manuals-3/poc/H-046-019812-00-TE5-TE7-TE7Max-Instructions-for-Use-Basic-Volume-FDA-7.0-4-25.pdf.  The height and weight of the main unit are listed in Section 2.4.3.

The Mindray TEX model is similarly a large ultrasound device with an integrated cart design:



(*Id*., Ex. H at 2).  The main unit of the TEX device, with transducer connectors and holders attached to its backside, can be disassembled from the cart, as shown below, but doing so renders the device nonfunctional, as the battery supplying power to the main unit is located on the lower cart stand (number 9 labeled in the diagram above).



(*Id*., Ex. H at 17-19; *id*. at 4-5 (listing item "9" in diagram as "Battery pack")).  When disassembled from the cart, the main unit of the TEX (including transducer holders) weighs approximately twenty-two pounds and has a size of about 6.5" (depth) x 17" (width) x 22" (height).[4]

---

[4] The Mindray manual that Teratech relies upon in its claim charts is available at, https://www.mindray.com/content/dam/xpace/en_us/service-and-support/training-and-

## V.    APPLICABLE LEGAL STANDARDS

### A.    Rule 12(b)(6) Motion to Dismiss

In patent cases, "[t]o survive a motion to dismiss under Rule 12(b)(6) a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376 (Fed. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal marks omitted).  As the Supreme Court explained in *Iqbal*, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and as it explained in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  556 U.S. at 678; 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), a court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Courts should, however, "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023).

### B.    Willful Infringement

"To sufficiently plead willful infringement, a patentee must allege facts plausibly showing that, as of the time of the claim's filing, the accused infringer: (1) knew of the patents-in-suit, (2) infringed the patents after acquiring that knowledge, and (3) knew, or should have known, that its

---

education/resource--library/technical--documents/operators-manuals-3/poc/H-046-023006-01-Operators-Manual-Basic-EN-FDA-6.0-082025.pdf. The height and weight of the device are listed in Section 2.4.3, of which a substantial portion is the main unit.

9

conduct in doing so amounted to infringement of the patents." *Hills Point Indus. LLC v. Just Fur Love LLC*, No. 22-cv-1256, 2023 WL 8804046, at \*2 (D. Del. Dec. 20, 2023).

### C.   Infringement

Allegations of patent infringement must put the "potential infringer . . . on notice of what activity or device is being accused of infringement." *K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013).  Patentees will not assert a plausible claim for infringement "by reciting the claim elements and merely concluding that the accused product has those elements.  There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## VI.   ARGUMENT

### A.   Teratech's Willful Infringement Allegations Should be Dismissed Because They are Legally Deficient

Teratech's allegations of willful infringement should be dismissed.  "Willful patent infringement is the rare exception, not the rule." *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-CV-1345-RGA, 2021 WL 4477022, at \*7 (D. Del. Sept. 30, 2021) (citing *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987-88 (Fed. Cir. 2021)).  Teratech's Complaint fails to allege any fact showing that Mindray had pre-suit knowledge of the asserted '073, '363, '480, and '023 patents.  And as to the '699 patent, Teratech's allegations, at best, allege awareness of the patent application that ultimately issued as the '699 patent, which is legally insufficient to show pre-suit knowledge of the issued patent.  Because Teratech has failed to plead facts showing knowledge of the Asserted Patents, even accepting Teratech's allegations as true, Teratech's allegations regarding willful infringement should be dismissed.

### 1. Teratech's Allegations Do Not Plausibly Allege Mindray's Knowledge of the '073, '363, '480, and '023 Patents

Teratech's allegations fail to demonstrate that Mindray had knowledge of the '073, '363, '480, and '023 patents. To plausibly allege willful infringement, Teratech must plead that Mindray either had actual knowledge of the Asserted Patents or was willfully blind to them. *Global–Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 765, 131 S.Ct. 2060, 2068, 179 L.Ed.2d 1167 (2011). Teratech pleads neither. Instead, Teratech alleges that Mindray may generally have been aware of other, non-asserted Teratech patents, many of which are unrelated to any of the Asserted Patents. These generic allegations are insufficient to show that Mindray had actual knowledge or was willfully blind to the Asserted Patents.

For example, the Complaint discusses a prior OEM (Original Equipment Manufacture) relationship between Teratech and Mindray. (D.I. 1, ¶¶ 32-37). But according to the allegations of the Complaint, the OEM relationship began in 2004 and ended no later than 2006, years before any of the Asserted Patents were even filed, and thus had nothing to do with the Asserted Patents. (*Id.*, ¶¶ 21, 23, 25, 27, 29, 32-37). Even accepting Teratech's allegations regarding the parties' prior relationship as true, those facts are irrelevant to Mindray's knowledge of any Asserted Patent.

Teratech also alleges knowledge of the Asserted Patents based on the fact that there are patents owned by Mindray which cite unrelated Teratech patents on their face. (*Id.*, ¶ 39). But the citation of those unrelated Teratech patents has no bearing on Mindray's knowledge of the Asserted Patents. (*Id.*, ¶¶ 32-46). For example, Teratech points to Mindray's acquisition of a company called Zonare Medical Systems, which was the assignee of U.S. Patent No. 7,352,570 ("the '570 patent"). (*Id.*, ¶ 40). Teratech points out that Zonare's '570 patent cites an unrelated Teratech patent, U.S. Patent No. 5,690,114 ("the '114 patent"). (*Id.*, ¶ 40). But that citation is wholly irrelevant to Mindray's knowledge of the Asserted Patents.

11

Finally, Teratech relies upon Mindray's public financial statements that generically acknowledge that Mindray's competitors have patent portfolios. (*Id.*, ¶ 48). Without any supporting facts, Teratech speculates that "such competitors include Teratech, and the patents referenced include the patent families that would ultimately include the Asserted Patents." (*Id.*). *See InVue Sec. Prods. Inc. v. Mobile Tech, Inc.*, No. 3:19-CV-407-SI, 2019 WL 5295464, at *4 (D. Or. Oct. 18, 2019) ("Competition alone is not enough to infer pre-suit knowledge of the patents-in-suit."). The Court need not accept Teratech's speculation as true.[5] *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). As such, Teratech's allegations should be dismissed for failing to sufficiently allege pre-suit knowledge of the '073, '363, '480, and '023 patents. *See, e.g.*, *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638-RS, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) ("The requisite knowledge of the patent allegedly infringed simply cannot be inferred from mere knowledge of other patents, even if somewhat similar."); *see also Cerebrum Sensor Techs., Inc. v. Revvo Techs., Inc.*, No. CV 24-245-JLH-SRF, 2025 WL 72110, at *3 (D. Del. Jan. 10, 2025), *report and recommendation adopted*, No. CV 24-245-JLH-SRF, 2025 WL 326647 (D. Del. Jan. 29, 2025) (finding that pleading knowledge of related patents or patent applications is "too tenuous to give rise to a plausible inference of Defendant's knowledge of the [asserted patent].").

### 2.    Teratech Fails to Allege Mindray's Knowledge of the '699 Patent

Teratech similarly fails to plausibly allege that Mindray had pre-suit knowledge of the '699 patent. Teratech asserts that Mindray knew of the '699 patent because the application that issued as the '699 patent was cited during prosecution of Mindray patents. (D.I. 1, ¶ 42). Specifically,

---

[5] The same is true for the next allegation in Teratech's Complaint, which claims that Mindray conducts freedom-to-operate searches and alleges that those searches would have included the Asserted Patents. (*Id.*, ¶ 49). This allegation is likewise mere speculation about Mindray's operations and the content of hypothetical searches and need not be accepted as true.

Teratech alleges that "during prosecution of Mindray U.S. Patent No. 10,716,538, which issued in 2020 ("the '538 patent"), the Examiner cited the Teratech Patent Application Publication No. 20140121524 ("the '524 publication")—this is the application that issued as the '699 patent." (*Id.*, ¶ 44). Teratech's allegation is insufficient to show knowledge of the '699 patent for purposes of willful infringement. "[A]wareness of a patent application does not automatically imply actual knowledge of the patent upon issuance." *Helios Streaming, LLC v. Vudu, Inc.*, No. CV 19-1792-CFC-SRF, 2021 WL 254069, at *5 (D. Del. Jan. 26, 2021), *report and recommendation adopted*, No. CV 19-1792-CFC-SRF, 2021 WL 1138024 (D. Del. Mar. 25, 2021). *See also State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). Moreover, Teratech makes no allegation that the '524 publication was ever discussed during the prosecution of Mindray's '538 patent, and makes no allegation that Mindray knew if the '524 publication ever issued as a patent. Even accepting Teratech's allegations as true, knowledge of an unissued patent application is insufficient to show knowledge for purposes of willful infringement, and Teratech's willfulness allegations as to the '699 patent should be dismissed as well. *State Indus., Inc.*, 751 F.2d at 1236.

Teratech next alleges that U.S. Patent Nos. 11,304,677 ("the '677 patent") and U.S. Patent No. 11,890,141 ("the '141 patent"), which are assigned to Mindray, cite to Teratech's U.S. Patent No. 10,677,790 ("the '790 patent"). But the '790 patent is not asserted in this case. (D.I. 1, ¶¶ 41-43). Teratech further alleges that the '699 patent, which claims priority to the same application as the '790 patent, had issued at the time of the prosecution of the '677 and '141 patents. (*Id.*, ¶ 42). But alleging knowledge of related patents or patent applications is insufficient as a matter of law to show pre-suit knowledge of an asserted patent, as neither give a reader any sense of what is actually claimed in the patent at issue, and thus, what to avoid. *See iFIT Inc.*, 2022 WL 609605, at *1-*2; *State Indus., Inc.*, 751 F.2d at 1236 ("Filing an application is no guarantee any patent

13

will issue," and "[w]hat the scope of claims in patents that do issue will be is something totally unforeseeable."). And the Court need not accept Teratech's unsupported speculation that at the time the '790 patent was cited during prosecution of Mindray's '677 patent, Mindray had knowledge of the '699 patent. (D.I. 1, ¶ 43); *Twombly*, 556 U.S. at 678. Teratech fails to allege that Mindray had any substantive awareness of the '699 patent or its claims. Teratech's attempts to piece together facts to show Mindray's knowledge of the '699 patent fail, and Teratech has not sufficiently pled a claim for willful infringement.

### 3.    Teratech Fails to Sufficiently Allege Mindray's Willful Blindness of the Asserted Patents

Teratech next alleges that even if Mindray did not have actual knowledge of the Asserted Patents, Mindray was willfully blind to the existence of those patents. (D.I. 1, ¶¶ 52-56). In support of that allegation, Teratech repeats the same attenuated allegations discussed above that fail to plead knowledge of the Asserted Patents. (*Id.*, ¶¶ 36, 40, 48-50). For at least the reasons discussed above, these allegations fail here too.

A sufficiently pled claim for willful blindness includes "specific facts to show [Mindray] (1) subjectively believed there was a high probability its components were both patented and infringing and (2) took deliberate actions to avoid learning that fact." *Aperture Net LLC v. Cambium Networks, Inc.*, No. CV 21-298-RGA, 2022 WL 605740, at *4 (D. Del. Feb. 1, 2022). Teratech's Complaint falls well short of this standard. Teratech alleges, without pointing to any supporting facts, that Mindray was willfully blind to Teratech's patent portfolio because of the OEM relationship between the parties, which, as discussed above, ended many years before the Asserted Patents were even filed and thus is irrelevant to the Asserted Patents. (D.I. 1, ¶¶ 37 (OEM relationship ended in 2006), 29 (earliest filing date of the Asserted Patents is for the '699 patent— September 25, 2013)). Teratech next alleges Mindray was willfully blind to the Asserted Patents

14

because, as discussed above, unasserted Teratech patents were cited during the prosecution of Mindray patents. (D.I. 1, ¶ 54). Teratech also generically alleges, again without any support, Mindray's willful blindness of the Asserted Patents as part of the freedom-to-operate searches Mindray may have conducted. (*Id.*, ¶ 55). But even if Mindray ran freedom-to-operate searches, Teratech does not allege any facts demonstrating that Mindray saw and then intentionally avoided reviewing the Asserted Patents. *See Aperture Net*, 2022 WL 605740 at \*4 (finding allegations that "Defendant conducted prior art searches and freedom to operate analyses" insufficient to plausibly allege pre-suit knowledge."). Teratech's unsupported speculation need not be taken as true, but even if it the Court were to accept that speculation, it still falls far short of sufficiently pleading that Mindray was willfully blind to the Asserted Patents.

For all of these reasons, Teratech has failed to sufficiently plead Mindray willfully infringes any Asserted Patent, and Teratech's willfulness allegations should be dismissed.

## B. The Complaint Should Be Dismissed as to the Patents That Require the Ultrasound Device be "Handheld"

The independent asserted claims of two of the five Asserted Patents, the '073 and '699 patents, recite a "***handheld*** medical ultrasound imaging device." (D.I. 1, Ex. A, Cl. 41; Ex. E, Cl. 45). Even accepting the allegations in the Complaint as true, the accused Mindray ultrasound devices are not handheld, and thus Counts I, II, IX and X of Complaint should be dismissed. *Roper v. Jo-Ann Stores, Inc.*, 211 F. App'x 950, 951 (Fed. Cir. 2007) (affirming 12(b)(6) dismissal where accused product failed to meet the structural limitations of the asserted claims).

### 1. Teratech Fails to Sufficiently Plead Infringement of Claim 41 of the '073 Patent by the TE7 Product

Teratech's Complaint fails to plead that the "handheld" claim requirements of claim 41 of the '073 patent are satisfied by the accused Mindray TE7 product. Asserted claim 41 is directed to a "handheld medical ultrasound imaging device" that includes "a handheld portable processing

15

unit." (D.I. 1, Ex. A, Cl. 41).  The claim specifies that this "handheld portable processing unit" must include, among other things, the ability to "connect[] to the at least one handheld transducer," "the integrated touch screen display," "a memory system," and "a battery."  (*Id.*)  According to the plain language of the claim, all of these features and capabilities must be "handheld."

The allegations in Teratech's Complaint and accompanying Exhibit G fail to state a claim for infringement of the "handheld" limitations of claim 41, and should be dismissed.  Teratech alleges that the "main unit" (i.e., the screen assembly) of the TE7 device is the "handheld portable processing unit" required by claim 41.  (*See* D.I. 1, Ex. G at 16-21).  However, Teratech's allegations, accepted as true, show that the "main unit" of the TE7 is not handheld.  Teratech's only factual allegations on this point are that "[t]he main unit can be moved and attached to a trolley cart, a desktop mount and/or a wall mount."  (D.I. 1, Ex. G at 1.)  Although Teratech makes the bald allegation that the "main unit" is handheld, the facts it cites in support of that assertion— that the main unit can be *attached* to a trolley cart, or *attached* to a desktop support mount, or *mounted* on the wall unit—show that the main unit is not handheld.  (*Id*. at 1-3).

Moreover, the images of the TE7 device Teratech relies on in Exhibit G underscore how physically substantial the main unit of the TE7 device is, having multiple transducer connecters on the backside of the main unit, and having holders for those transducers on its sides.  (*Id*. at 2, 22-23, 25).  As noted above, the Mindray manual that Teratech relies upon in its claim charts shows that the main unit of the TE7 device (including transducer holders) weighs nearly sixteen pounds and has a size of about 5" x 15" x 15".  Teratech also includes the image of a desktop support mount to which the main unit of the TE7 can be attached, (*id*. at 3), further highlighting the physical substantiality of the TE7's main unit.  Given the size and weight of the TE7 device, no medical professional would or could use the TE7 device to perform an ultrasound examination while

16

holding the device.  Because Teratech has not pointed to a "handheld portable processing unit" in the TE7 device, Teratech has failed to meet its burden of pleading infringement of the '073 patent and its allegations as to that patent should be dismissed.

### 2. Teratech Fails to Sufficiently Plead Infringement of Claim 41 of the '073 Patent by the TEX Product

Like the TE7 product, Teratech also fails to sufficiently plead infringement of claim 41 of the '073 patent by the Mindray TEX device.  A review of Count I of Teratech's Complaint as well as Exhibit H quickly demonstrates that Teratech has not sufficiently alleged or shown the TEX is or could be "handheld."  That is because Teratech cannot.  The images of the TEX device Teratech includes in its Complaint show how physically large it is and how there is no circumstance where a user can hold the TEX device in their hand.  (*See* D.I. 1, ¶ 68; Ex. H at 2.)

Teratech's allegations that the "handheld portable processing unit" of claim 41 is satisfied by the "main unit" of the TEX device—which must be "connectable to the at least one handheld transducer assemble with the cable," incorporate "the processing unit having an integrated touch screen display," and contain "a memory system,"—even taken as true, require dismissal.  (D.I. 1, Ex. H at 13-22).  Teratech fails to allege any fact supporting its allegations, instead making only the conclusory statement that the "main unit" is a "handheld portable unit."  (*See id*.)  The main unit of the TEX device is even larger in size and heavier in weight than the already substantial main unit of the TE7 device discussed above.  (*See* D.I. 1, ¶ 68; Ex. H at 17-19).  As noted above, the Mindray manual that Teratech relies upon in its claim charts shows that the main unit of the TEX device (including transducer holders) weighs nearly 22 pounds and has a size of about 6.5" x 17" x 22".  Therefore, like the TE7 device, no medical professional would or could use the TEX device to perform ultrasound examinations while holding the TEX device.  Teratech's unsupported allegations of infringement should be dismissed.  *See N. Star Innovations, Inc. v. Micron Tech.,*

17

*Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) ("[A] patentee cannot meet its obligation to assert a plausible claim of infringement under the *Twombly/Iqbal* standard by merely copying the language of a claim element, and then baldly stating (without more) that an accused product has such an element."); *Shahin v. Darling*, 606 F. Supp. 2d 525, 540 (D. Del. 2009) (dismissing complaint "rife with conclusory allegations" because pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.") (citing *Twombly*, 550 U.S. 544)).

Moreover, the main unit of the TEX device is not functional unless connected to the cart system. As noted above, claim 41 requires that the "handheld portable processing unit" contain "a battery." (D.I. 1, Ex. A, Cl. 41). Teratech alleges the presence of a battery in the tablet housing of the handheld portable processing unit "upon information and belief." (D.I. 1, Ex. H at 22). However, there is not a battery in the main unit of the TEX device, as Teratech's allegations demonstrate. On a different page of Exhibit H, Teratech includes a diagram of the TEX device which shows that the battery pack, designated as part number 9 in the chart accompanying the diagram, is located on the lower section of the cart. (*Id.* at 4-5). On one hand Teratech pleads that the TEX device is handheld, and that in particular the main unit is the "handheld portable processing unit" of claim 41. (*Id*. at 13-22). But on the other hand, Teratech also recognizes that this part of the TEX device, with its significantly large size and weight, has no battery and thus cannot function as a medical ultrasound imaging device. (*Id.* at 4-5). This inconsistency in Teratech's Complaint, and its failure to plead infringement of claim 41 by the TEX device, warrants dismissal of Teratech's allegations of infringement of the '073 patent. *See N. Star Innovations*, 2017 WL 5501489, at *2 ("There needs to be some facts alleged that articulate why it is plausible that the other party's product infringes that patent claim—not just the patentee asserting, in

18

conclusory fashion, that it is so."); *Web 2.0 Technologies, LLC v. Accelo, Inc.*, No. 23-cv-001-MN, D.I. 17 at 5 (D. Del. Oct. 5, 2023).[6]

### 3. Teratech Fails to Sufficiently Plead Infringement of Claim 45 of the '699 Patent by the TE7 Product

Teratech's Complaint fails to plead that the "handheld" claim requirement of the '699 patent is satisfied by the accused Mindray TE7 product. Asserted claim 45 is directed to a "method of operating a handheld medical ultrasound imaging device." Although the term "handheld" appears in the preamble of the claim, the term "handheld" defines the overall structure of the alleged invention of claim 45, and informs the structure of the remaining recitations of the claim. *See Catalina Mktg. Int'l. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("[A] preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality to the claim.'") (quoting *Pitney Bowes, Inc. v. Hewlett Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)).

The allegations in Teratech's Complaint and accompanying Exhibit M, even taken as true, fail to allege any facts showing that the TE7 device is handheld. As with the '073 patent, Teratech alleges that the "main unit" satisfies the handheld limitation. But as with the '073 patent, Teratech's only factual support for its allegation that the "main unit" is "handheld" is that it "can be moved and attached to a trolley cart, a desktop mount, and/or a wall mount." That allegation shows that the TE7 main unit is ***not*** handheld, but instead must be placed on a mount, and undermines Teratech's infringement allegations. The images Teratech again relies on—showing the main unit of substantial weight and size with the transducer connecters on the backside and

---

[6] The remaining independent claims of the '073 patent, claims 1 and 26, similarly require the ultrasound imaging device be "handheld," and/or that the display and processor components of the ultrasound be "handheld." (D.I. 1, Ex. A, Cls. 1, 26). While Teratech does not explicitly allege or chart infringement of claims 1 and 26 in its Complaint, these claims likewise cannot be infringed for at least the reasons discussed herein.

holders on the sides, and showing the substantial desktop base mount assembly that is needed to hold the main unit up—underscore that a medical professional could not use the TE7 device to perform ultrasound examinations while holding the TE7 device.  (D.I. 1, Ex. M at 2-3).  Teratech's allegations that the TE7 device infringes the '699 patent should therefore be dismissed.[7]

## VII.    CONCLUSION

For the reasons explained above, Mindray respectfully requests that the Court dismiss Teratech's willful infringement allegations as well as Counts I, II, IX, and X, and enter the proposed order submitted herewith.  Dismissing these allegations will narrow this case, remove allegations that are not well pled, and preserve the resources of the parties and the Court.

Dated: December 23, 2025

**FISH & RICHARDSON P.C.**

*/s/ Susan E. Morrison*
Susan E. Morrison (#4690)
Grayson P. Sundermeir (#6517)
Taylor Reeves (#6900)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel: 302-652-5070
smorrison@fr.com; sundermeir@fr.com, reeves@fr.com

Frank E. Scherkenbach
Jeffrey Shneidman
Qiuyi Wu
FISH & RICHARDSON P.C.
One Marina Park Drive
Suite 1700
Boston, MA 02210
(617) 542-5070
scherkenbach@fr.com; shneidman@fr.com; qwu@fr.com

---

[7] The remaining independent claim of the '699 patent, claim 1, similarly requires the ultrasound imaging device be "handheld."  (D.I. 1, Ex. E, Cl. 1).  While Teratech does not explicitly allege or chart infringement of claim 1 in its Complaint, this claim likewise cannot be infringed for at least the reasons discussed herein.

Jeremy T. Saks
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
(212) 765-5070
saks@fr.com

***Attorneys for Defendants***

21