## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TERATECH CORP. d/b/a TERASON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 25-1149-MN |
| | ) |
| MINDRAY BIO-MEDICAL ELECTRONICS | ) |
| CO. LTD. d/b/a MINDRAY GLOBAL and | ) |
| MINDRAY DS USA, INC., d/b/a MINDRAY | ) |
| NORTH AMERICA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

ME1\59686176.v1

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................ 2

   A.  FACTS RELATED TO MINDRAY'S ACTUAL KNOWLEDGE OF TERATECH'S ASSERTED PATENTS ............................................................................................... 2

   B.  FACTS RELATED TO MINDRAY'S INFRINGEMENT OF THE '699 AND '073 PATENTS ..................................................................................................................... 5

III.  LEGAL STANDARD .................................................................................................... 7

IV.  ARGUMENT ................................................................................................................. 8

   A.  TERATECH'S COMPLAINT STATES A CLAIM FOR WILLFUL INFRINGEMENT 8

      I.  TERATECH PLAUSIBLY ALLEGES THAT MINDRAY HAD ACTUAL KNOWLEDGE OF THE ASSERTED PATENTS ............................................... 8

      II.  TERATECH SUFFICIENTLY ALLEGES THAT MINDRAY WAS WILLFULLY BLIND ..................................................................................................................... 11

   B.  TERATECH'S COMPLAINT PLAUSIBLY ALLEGES INFRINGEMENT OF "HANDHELD" LIMITATIONS ............................................................................... 12

V.  CONCLUSION ............................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aperture Net, LLC v. Cambium Networks, Inc.*,
C.A. No. 21-298-RGA, 2022 WL 605740 (D. Del. Feb. 1, 2022) ..........................................11

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,
98 F.3d 1563 (Fed. Cir. 1996)...............................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................7

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)..............................................................................................14

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ...............................................................................................12

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)..................................................................................................7

*Cerebrum Sensor Techs., Inc., v. Revvo Techs., Inc.*,
No. CV 24-245-JLH-SRF, 2025 WL 72110 (D. Del. Jan. 10, 2025) ....................................10

*D&M Holdings Inc. v. Sonos, Inc.*,
No. 1:16-cv-00141, 2017 WL 1395603 (D. Del. Apr. 18, 2017) ...........................................13

*Deston Therapeutics LLC v. Trigen Labs. Inc.*,
723 F. Supp. 2d 665 (D. Del. 2010)........................................................................................13

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
888 F.3d 1256 (Fed. Cir. 2018)..............................................................................................12

*DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
No. 18-cv-00098-MN, 2019 WL 3069773 (D. Del. July 12, 2019) .......................................11

*Earin AB v. Skullcandy, Inc.*,
2024 WL 4791588 (D. Del. 2024) ..........................................................................................12

*Helios Streaming, LLC v. Vudu, Inc.*,
No. CV 19-1792-CFC-SRF, 2021 WL 254069 (D. Del. Jan 26, 2021)..................................10

*ICON Health &Fitness, Inc. v. Tonal Systems, Inc.*,
C.A. No. 21-652-LPS-CJB, 2022 WL 611249 (D. Del. Feb. 07, 2022)...................................9

ME1\59686176.v1

*iFit Inc. v. Peloton Interactive, Inc.*,
   C.A. No. 21-507-RGA, 2022 WL 609605 (D. Del. Jan. 28, 2022) .........................................10

*InVue Sec. Prods. Inc. v. Mobile Tech, Inc.*,
   No. 3:19-cv-407-SI, 2019 WL 5295464 (D. Or. Oct. 18, 2019) ...................................4, 9, 10

*Magnacross LLC v. GE MDS LLC*,
   No. 20-964-MN, 2020 WL 6581530 (D. Del. Nov. 10, 2020) ................................................13

*McZeal v. Sprint Nextel Corp.*,
   501 F.3d 1354 (Fed. Cir. 2007)..............................................................................................12

*Motiva Pats., LLC v. Sony Corp.*,
   408 F. Supp. 3d 819 (E.D. Tex. 2019)...................................................................................11

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018)........................................................................................12, 13

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)......................................................................................................8

*Roche Diabetes Care, Inc. v. Insulet Corp.*,
   CA. No. 20-825-MN ..................................................................................................................9

*State Indus. Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985)..............................................................................................10

*Suprema, Inc. v. ITC*,
   626 Fed. Appx. 273 (Fed. Cir. 2015)......................................................................................11

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
   No. 11-06638-RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012).........................................10

**Other Authorities**

Rule 12(b)(6)........................................................................................................................7, 9, 13

ME1\59686176.v1

## I.   INTRODUCTION

Mindray,[1] in its motion to dismiss certain of Teratech's[2] infringement claims, D.I. 12 ("D.I. 12" or "Mindray's Motion"), attempts to elevate the pleading standards for infringement to a degree akin to summary judgment without the benefit of discovery or the claim construction process.  This approach should be rejected.  Teratech's Complaint more than "plausibly" alleges willful infringement by the Accused Products.

First, in its "nearly five pages of allegations," *see* D.I. 12 at 4, Teratech has certainly alleged enough to permit discovery on its willful infringement claims.  Mindray's assertion to the contrary rests on a myopic view of Teratech's claims, addressing specific allegations in isolation and missing the forest for the trees.  When taken together, Teratech's allegations are more than sufficient to plausibly infer that Mindray had actual knowledge of, or was willfully blind to the existence of, Teratech's patents.

Then, again despite extensive pleading and detailed claim charts, Mindray asks the Court to dismiss Teratech's claims that include the "handheld" limitation—not because Mindray is confused about Teratech's allegations, but because Mindray expects the Court to adopt its improperly narrow definition of that term and effectively make a determination regarding the appropriate construction of "handheld" without the benefit of the claim construction process.

Mindray's arguments are nothing more than an attempt at an end-run around the discovery process.  Teratech was not required to prove its case in its Complaint. Mindray's Motion should

---

[1] Defendants Mindray Bio-Medical Electronics Co. Ltd. d/b/a Mindray Global and Mindray DS USA, Inc., d/b/a Mindray North America are referred to herein collectively as "Mindray."

[2] Plaintiff Teratech Corp. d/b/a Terason is referred to herein as "Teratech."

1

be **DENIED** in its entirety.

## II.  FACTUAL BACKGROUND

This is an action for infringement of U.S. Patent Nos. 11,675,073 (the "'073 Patent"); 12,102,480 (the "'480 Patent"); 11,857,363 (the "'363 Patent"); 12,115,023 (the "'023 Patent"), and 9,877,699 (the "'699 Patent") (referred to collectively as the "Asserted Patents"). The Asserted Patents are directed, generally, to portable medical ultrasound imaging systems and methods that employ beamforming circuitry and a touchscreen display for improved connectivity and ease of use in clinical and hospital settings. *See generally* D.I. 1 ("Complaint") at ¶¶ 21-30.

### A.  Facts Related To Mindray's Actual Knowledge of Teratech's Asserted Patents

Mindray and Teratech were first business partners and then competitors in the unique technology space of portable ultrasound systems by at least 2004, when Mindray and Teratech entered into an OEM relationship and Teratech sold Mindray its ultrasound beamforming engines. *Id.* at ¶ 32. By virtue of that relationship, Mindray had access to the features and inner-workings of Teratech's commercial product including the engine boards with beamformer circuitry; the software and user interface operative for Doppler processing and imaging; examination presets, transducers and transducer connectors; and manuals. *See* D.I. 1-2 at 27-30, Exhibit A of the OEM Agreement. Mindray also had access to Teratech's engineers and general know-how. D.I. 1 at ¶ 33. Through this relationship, Mindray also became aware of Teratech's patent portfolio, including its patents directed to portable ultrasound technology. *Id.* at ¶ 36. The OEM Agreement was expressly subject to the "valid patent rights" held by Teratech. *See* D.I. 1-2 at 15, OEM Agreement at ¶¶ 9.4 and 9.5.

For example, the patent applications that the '073 Patent claims priority to had filing dates of November 26, 2003 and November 24, 2004—contemporaneous with the start of the OEM

ME1\59686176.v1

relationship.  The '073 Patent has descriptions and illustrations for a tablet assembly, *see* D.I. 1-1 at 4, 10-11, 17, Figs. 2, 5A-6B, 10E; use of a multiport connector, *id.* at 25-27, Figs. 15D-15F; integrated beamforming and image processing in a tablet assembly, *id.* at 10, Fig. 5A; a touchscreen operated ultrasound image display, *id.* at 22, Fig. 15A;  optional mounting of a tablet on a stand, *id.* at 12, Fig. 7;  mounting on a cart, *id.* at 52-55, Figs. 32-33; and for hand carried portable transport, *id.* at 49, Fig. 31D.  These figures each appear in one of the priority applications, which were first published within a year of the OEM Agreement.  *See* D.I. 1-1 at 2-3.  These figures were therefore part of the "valid patent rights" that the OEM Agreement recognized.  It is no accident that these same features have been incorporated into the Mindray ultrasound tablet products.  *See generally* D.I. 1-2 at 33-323 (comparing Accused Products to Asserted Patents). After that OEM relationship ended, Mindray and Teratech became direct competitors starting in or around 2013, and have been ever since.  *Id.* at ¶ 38.

Mindray's work in this space also included development of its own patent portfolio. Several of Mindray's patents and patent applications cite Teratech patents directed to the portable ultrasound technology claimed in the Asserted Patents.  Examples include specific citation and reference to the published application that issued as the '699 Patent, as well as to the '790 and '114 Patents, which depend from the same provisional applications as the Asserted '480, '363, '023, and '699 Patents.  *Id.* at ¶ 39.

Additionally, Mindray has a stated practice of both monitoring competitors' patent portfolios, including Teratech's, and evaluating those patents against their own products in development.  *Id.* at ¶¶ 47-49.  Indeed, Mindray represented in its SEC filings that since the year 2000, its product development teams have been ***required*** to conduct patent clearance searches.  *Id.* at ¶ 49. Patent clearance searches, also called "freedom-to-operate" searches, entail comparing

Mindray's products to patents in the space. Considering that Mindray regularly cited Teratech's patents in its own patent filings, the Teratech Asserted patents *must* be among the patents evaluated during this process with respect to at least the Accused Products. *Id.* at ¶ 50.

Therefore, considering the OEM relationship formed between Mindray and Teratech in 2004 and Mindray's acknowledgement of Teratech's patent rights, which included the patent family that lead to the Asserted Patents; the ongoing competitive relationship between Teratech and Mindray since at least 2013; Mindray's actual knowledge of specific Teratech patents, including the published application that issued as the Asserted '699 Patent, by virtue of its patent prosecution activities; and Mindray's corporate policy of affirmatively monitoring competitors' patent portfolios and conducting freedom-to-operate analyses, it is reasonable to infer that Mindray monitored Teratech's patent portfolio over the years and therefore has actual knowledge of Teratech's patents, including at least the Asserted Patents. *Id.* at ¶ 51. These allegations are more than "plausible" and warrant further discovery.

To the extent that Mindray has somehow avoided actual knowledge of Teratech's Asserted Patents, that could only be through active avoidance, and therefore willful blindness. D.I. 1 at ¶¶ 52-55. In order to avoid knowledge of Teratech's Asserted Patents, Mindray had to take active steps, keeping its head in the sand while at the same time copying Teratech's products; citing Teratech's patents in certain, but not all, of Mindray's patent applications directed to portable ultrasound technology; and performing one or more freedom-to-operate searches involving competitors', *e.g.,* Teratech's, patent portfolios. *Id.* at ¶ 56. This "constellation of facts" is more than sufficient to infer either actual pre-suit knowledge of the Asserted Patents or willful blindness to them and to permit discovery on Teratech's willful infringement claims. *See InVue Sec. Prods.*

4

*Inc. v. Mobile Tech, Inc.*, No. 3:19-cv-407-SI, 2019 WL 5295464 (D. Or. Oct. 18, 2019).

Finally, Teratech has alleged knowledge of the Asserted Patents "since at least the filing and service of this Complaint [and that] Mindray continues to infringe, and to actively induce infringement, even following receipt of the Complaint." D.I. 1 at ¶ 60. Teratech's allegations are, therefore, sufficient to allege willful infringement both before and after the filing of the Complaint.

## B. Facts Related to Mindray's Infringement of the '699 and '073 Patents

Representative Claim 41 of the '073 Patent is a system claim directed to "[a] handheld medical ultrasound imaging device," *id.* at ¶ 22, and representative Claim 45 of the '699 Patent is a method claim directed to "[a] method of operating a handheld medical ultrasound imaging device," *id.* at ¶ 30. These descriptions appear in the preambles of the claims.

As will be discussed more fully below, the preamble is not necessarily a limitation of the claim. Regardless, Teratech specifically alleged that the TE7 practices the preamble of the '699 Patent, and includes a "main unit [that] is a handheld device. The main unit can be moved and attached to a trolley cart, a desktop mount, and/or a wall mount." D.I. 1-2 at 302, Ex. M at 1. Other than the preamble, the word "handheld" does not appear again in Claim 45 of the '699 Patent. *See* D.I. 1 at ¶ 30. Teratech does not allege that the TEX product infringes the '699 Patent in the Complaint.[3]

In Claim 41 of the '073 Patent, the word "handheld" appears in the preamble, then describes first a "handheld transducer assembly" and then a "handheld portable processing unit." *See id.* at ¶ 22. Teratech specifically alleged that the TE7 infringed the "handheld" limitations of

---

[3] Teratech reserves the right to amend the list of Accused Products pursuant to the schedule set by the Court.

ME1\59686176.v1

Claim 41 of the '073 Patent as follows:

- The "main unit" of the TE7 is a "handheld device." *See* D.I. 1-2 at 32, Ex. G. at 1. "The main unit can be attached to the trolley cart, a desktop support or a wall mounting unit." *Id.* at 2.

- "[T]he TE7 family includes a handheld display and image processing housing that includes at least one electrical connector." *Id.* at 2, 15.

- "The TE7 is designed for use with multiple transducer probes." *Id.* at 10. "Further, the TE7 Family can operate with multiple probes." *Id.* at 13. These probes are shown in images from the operator's manual. *Id.*

Teratech also specifically alleged that the TEX infringed the "handheld" limitations of Claim 41 of the '073 Patent as follows:

- "[T]he TEX is a handheld medical imaging device." D.I. 1-2 at 72, Ex. H at 1.

- "The TEX includes a handheld display and image processor . . ." *Id.* at 3.

- "The TEX is designed for use with multiple probes." *Id.* at 6. These probes are shown in images from the operator's manual. *Id*.

- "The main unit is a handheld portable unit that includes one or more computers (CPUs and GPUs) that are located inside the tablet housing that includes the main unit that executes software that detects a transducer assembly (probe) once connected thereto." *Id.* at 13.

- The manual also instructs the user to "[h]old the display assembly upright *with your hands* . . . ." *Id.* at 19 (emphasis added).

Furthermore, Mindray has admitted that "[t]he main unit of the TE7 device, i.e. the screen assembly portion with transducer connectors and holders attached to its backside, can be removed

6

from the cart. . . ." D.I. 12 at 7. Mindray has similarly admitted that "[t]he main unit of the TEX device, with transducer connectors and holders attached to its backside, can be disassembled from the cart . . . ." *Id.* at 8. These statements are admissions that these devices are capable of being, indeed designed to be, held in the user's hand at least during removal from a cart, desk, or wall mount and during transfer to another location. Additionally, common sense dictates that the transducers (probes) are held *in the hand* of the user during a scanning operation, are connected and detached *by hand*, and that the tablet displays of the Accused Products are capable of and designed to be held *by hand*.

Therefore, Teratech has alleged, and indeed Mindray has admitted to, facts sufficient to support infringement of the "handheld" elements of the claims of the '699 and '073 Patents under the "broadest possible construction" of the term. It is only by asking the Court to impermissibly narrow the meaning of "handheld" at the pleading stage that Mindray can allege non-infringement of these claim limitations.

## III.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Importantly, the standard is not whether Teratech "will ultimately prevail," but whether Teratech is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec.*

7

*Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

## IV.  ARGUMENT

### A.  Teratech's Complaint States a Claim for Willful Infringement

#### i.  *Teratech Plausibly Alleges that Mindray had Actual Knowledge of the Asserted Patents*

When taken as a whole, Teratech's allegations are sufficient to state a plausible claim to relief at the pleading stage, and entitle Teratech to move forward with discovery. Mindray's arguments suggest that any single allegation, discussed in a vacuum, is not sufficient to infer actual pre-suit knowledge of the Asserted Patents. *See, e.g.*, D.I. 12 at 10-12. But this is contrary to the standard of review and should be rejected. Mindray does not allege that Teratech has not pleaded sufficient facts to infer Mindray's knowledge of infringement of the Asserted Patents. Teratech, therefore, does not address this point herein. Nevertheless, Teratech has sufficiently alleged Mindray's knowledge of infringement of the Asserted Patents, as well. *See* D.I. 1 at ¶¶ 57-60.

Teratech has alleged a "constellation of facts" sufficient to infer that Mindray had actual knowledge of the Asserted Patents. Those facts include:

- Mindray and Teratech's OEM relationship, including knowledge of Teratech's valid patent rights and the specification of the '073 Patent, *see* D.I. 1 at ¶¶ 32-33;

- Mindray and Teratech's ongoing competitive relationship in this narrow industry

ME1\59686176.v1

*see id.* at ¶ 38;

- Mindray's citation to Teratech's patents in its own patent filings, including the published application that issued as the '699 Patent and patents sharing the same provisional application (and therefore specification) as the Asserted Patents, *see id.* at ¶ 39;

- Mindray's representations to the SEC and it shareholders regarding knowledge of competitors' portfolios, *see id.* at ¶¶ 47-50; and

- Mindray's representations to the SEC and its shareholders regarding requiring its product developers to perform freedom-to-operate analyses, *see id.*

Considering these facts as a whole, and "for the purposes of a Rule 12(b)(6) motion, [Teratech] has pleaded a 'constellation of facts' from which the Court may infer pre-suit knowledge." *InVue*, 2019 WL 5295464 at *5 (finding that, even though certain facts individually were not sufficient, the combination of the parties' involvement in multiple lawsuits involving similar technologies (and non-asserted patents); the parties' involvement in post-grant proceedings (regarding non-asserted patents); and the parties' position as competitors in the marketplace— taken together—were sufficient to infer knowledge of the asserted patents and survive a motion to dismiss). *See also Roche Diabetes Care, Inc. v. Insulet Corp.*, CA. No. 20-825-MN, Jan. 11, 2021 Tr. of Hearing on Motion to Dismiss at 21:10-22:11 (attached hereto at Ex. A) (finding that "allegations of knowledge of the patent[s] includ[ing] that the parties are sophisticated competitors, . . . [that] Defendant was aware of and investigated the patents of its competitors and acknowledged that competitors had relevant patents, that Plaintiff sold products that compete with Defendant . . . and that Defendant had specific knowledge of the . . . patent family" were sufficient to survive a motion to dismiss); *ICON Health &Fitness, Inc. v. Tonal Systems, Inc.*, C.A. No. 21-

9

652-LPS-CJB, 2022 WL 611249, at *3 (D. Del. Feb. 07, 2022) (citing *InVue* and noting that a party's knowledge of an adversary's related patents, combined with allegations that the party monitored its adversary's patent applications and/or was a competitor in the field, taken together, could be enough to plausibly allege knowledge of the patents).

The cases cited by Mindray do not support a different conclusion.  Indeed, each of these cases merely find that certain individual facts, taken on their own, are insufficient—but this is irrelevant to an evaluation of a "constellation of facts" such as here.  *See, e.g., InVue,* 2019 WL 5295464 at *5 (noting that "competition alone" was insufficient, but together with other facts finding it sufficient to survive motion to dismiss); *see also Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. 11-06638-RS, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) (knowledge of patent portfolio alone insufficient); *Cerebrum Sensor Techs., Inc., v. Revvo Techs., Inc.*, No. CV 24-245-JLH-SRF, 2025 WL 72110, at *3 (D. Del. Jan. 10, 2025) (knowledge of patent application or related patents alone insufficient); *Helios Streaming, LLC v. Vudu, Inc.*, No. CV 19-1792-CFC-SRF, 2021 WL 254069, *5 (D. Del. Jan 26, 2021) (awareness of patent application insufficient); *State Indus. Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (patent pending notice and competition with defendant were insufficient); *iFit Inc. v. Peloton Interactive, Inc.*, C.A. No. 21-507-RGA, 2022 WL 609605, *1-2 (D. Del. Jan. 28, 2022) (knowledge of patent application insufficient).  Teratech has alleged a "constellation of facts" and a pattern of behavior that, when viewed together, is more than sufficient to infer that Mindray has actual knowledge of the Asserted Patents.  Mindray's Motion should be denied on this basis alone.

Additionally, Teratech has alleged knowledge at least as of the filing of the Complaint sufficient to maintain at least its post-suit willfulness allegations.  Mindray does not argue otherwise and therefore, Teratech's allegations of post-suit willfulness should survive.  *See* D.I. 1

10

at ¶ 60; *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. 18-cv-00098-MN, 2019 WL 3069773, at \*3 (D. Del. July 12, 2019) (induced infringement claims based on post-suit knowledge were permissible). Thus, Teratech's Complaint sufficiently alleges both pre-filing and post-filing knowledge of the Asserted Patents and Mindray's Motion must be denied.

### ii. *Teratech Sufficiently Alleges that Mindray was Willfully Blind*

Similarly, the facts discussed above are sufficient to infer that if Mindray did not have actual knowledge of the Asserted Patents it must have taken affirmative steps to avoid that knowledge. *See, e.g., Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 834 (E.D. Tex. 2019) (finding that the plaintiff plausibly alleged willful blindness by alleging that the defendant had a policy or practice of not reviewing third-party patents); *Suprema, Inc. v. ITC*, 626 Fed. Appx. 273 (Fed. Cir. 2015) (affirming finding of willful blindness where the accused infringer had conducted market research on its competitor's products and research on patents related to the asserted method patent). Again, Mindray takes Teratech's allegations individually, and cites cases suggesting that those facts, alone, are insufficient to state a claim. *See Aperture Net*, *LLC v. Cambium Networks, Inc.*, C.A. No. 21-298-RGA, 2022 WL 605740, at \*4 (D. Del. Feb. 1, 2022) (prior art searches and freedom to operate opinions, alone, were insufficient to allege pre-suit knowledge or deliberate actions to avoid infringement).

Taken as a whole, Teratech's allegations, including Mindray's knowledge of Teratech and its products; Mindray's knowledge of Teratech's related patents and the published application that issued as the '699 Patent; Mindray's monitoring of competitor's patents, including Teratech's; and Mindray's requiring freedom-to-operate opinions are sufficient to infer that if Mindray did not have actual knowledge that is because it took actual steps to avoid infringement and therefore state a claim of willful infringement on a theory of willful blindness. Therefore, Mindray's Motion to

11

dismiss Teratech's willful infringement claims must be denied on this basis as well.

**B. Teratech's Complaint Plausibly Alleges Infringement of "Handheld" Limitations**

As discussed above, *see supra* at 6-7, Teratech's allegations include claim charts detailing how each limitation of the Asserted Claims is met by the Accused Products. Therefore, Mindray's Motion to dismiss Teratech's claims to "handheld" devices must be rejected, at least because Teratech has alleged "facts sufficient to place the alleged infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1357 (Fed. Cir. 2007).

In patent cases, "[a] plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). A patentee is not required to "explain in [the] complaint every element of every claim that you say is infringed and/or explain why it can't be done." *Id.* (rejecting defendant's argument that the cited evidence did not support infringement of every element of the claim and finding that plaintiff plausibly alleged infringement and supported those assertions with specific factual allegations.) "[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018); *see also Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding that complaint sufficiently pleaded infringement of claims directed to a spinal brace by "specifically identif[ying] the three accused products—by name and by attaching photos of the product packaging as exhibits—and alleg[ing] that the accused products meet 'each and every element of at least one claim.'"); *Earin AB v. Skullcandy, Inc.*, 2024 WL 4791588, \*2-\*3 (D. Del. 2024) (denying motion to dismiss infringement claims and rejecting the argument that the complaint failed to plead sufficient facts to make a plausible showing that a certain claim limitation was met, where complaint "identifies at least one accused product by name—Rail ANC True

12

Wireless earbuds—and provides a photo and illustration of the product. . . . [This is sufficient to] satisfy the *Iqbal/Twombly* pleading standard in a patent case").

Mindray's position regarding non-infringement of the "handheld" claims is not that they are somehow not on notice regarding Teratech's allegations.  Instead, Mindray insists that their products are incapable of infringing the "handheld" limitation.  *See generally* D.I. 12 at 15-19.  In order to reach this conclusion, Mindray adopts an overly narrow and self-serving definition of the claim term.  Thus, Mindray's Motion amounts to nothing more than a request that the Court construe this claim term in its favor, without the benefit of the appropriate claim construction process.  Mindray's premature request should be denied.  *See, e.g., Nalco*, 883 F.3d at 1349 (Fed. Cir. 2018) (denying defendants' Rule 12(b)(6) arguments where they "read like classic Markman arguments" and noting that the "purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits" (quoting *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990))); *Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723 F. Supp. 2d 665, 671 (D. Del. 2010) ("The Court will follow [a] lengthy line of cases and conclude that claim construction is not appropriate upon the present record of this Rule 12(b)(6) motion."); *D&M Holdings Inc. v. Sonos, Inc.*, No. 1:16-cv-00141, 2017 WL 1395603, at *10 (D. Del. Apr. 18, 2017) ("On a motion to dismiss, I will not engage in claim construction or look beyond the four corners of the complaint."); *Magnacross LLC v. GE MDS LLC*, No. 20-964-MN, 2020 WL 6581530, at *4 (D. Del. Nov. 10, 2020) (holding that when a defendant's argument "seems to turn on an issue of claim construction," the Court "declines to reach issues of claim construction in ruling on a motion to dismiss").

Furthermore, contrary to Mindray's unsupported assertion that their products could not infringe "under any reasonable understanding" of the Asserted Patents, *see* D.I. 12 at 1-3, claims must actually be given "their broadest possible construction" at the motion-to-dismiss stage.  *In re*

13

*Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012). Because each of Mindray's arguments regarding non-infringement of the "handheld" term apply an inappropriately narrow construction of the term, Mindray's Motion should be rejected on this ground as well.

As discussed above, in both the '699 and '073 Patents the phrase "handheld medical device" appears in the preamble. "Whether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is determined on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history." *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1572 (Fed. Cir. 1996). Therefore, whether or not the preamble actually limits the scope of the claim is determined based on underlying facts to be resolved by the Court as part of claim construction, and is not appropriate for resolution as part of a motion to dismiss.

Additionally, Mindray insists that the Accused Products cannot infringe these elements because, as Mindray asserts, both the TE7 and TEX are of a size or weight that make it "impossible" to "perform an ultrasound examination while holding the device." D.I. 12 at 16-17. Of course, the size and weight of the products and the relative "possibility" of performing an ultrasound while holding such a device is a factual question that alone must defeat Mindray's Motion. But in addition to the improper factual assumptions, Mindray's position turns on a meaning of "handheld" that requires the user to be able to actually perform an ultrasound *while holding the device*.[4] This is a classic claim construction argument that is inappropriate for

---

[4] None of the asserted claims limit the size of the claimed device by weight or dimension. *See* D.I. 1 at ¶¶ 22, 30.

ME1\59686176.v1

determination at this stage of the case.

Further, it strains credulity to assert that the "broadest possible construction" of "handheld" requires actual operation while the device is in the user's hand. Indeed, common sense belies Mindray's artificial limitations. If one imagines a healthcare worker operating *any* touchscreen ultrasound device in conjunction with a separate transducer (i.e. a probe), it is unlikely that any one person would hold the "main unit" of the device and the transducer in their hands while also operating the touchscreen. Nevertheless, these are factual issues inappropriate for resolution here.

When considered under the proper "broadest possible construction" framework, Mindray's position that the TE7 is not "handheld" is supported by evidence that actually proves the opposite. The fact that, as Mindray admits, the "main unit [of the TE7] can be moved and attached to a trolley cart, a desktop mount and/or a wall mount," *see* D.I. 12 at 16, shows that the TE7 is designed to be moved *by hand* between cart, desktop, and wall mount—thus it is capable of being held in the user's hand. This is certainly within the "broadest possible construction" of the term "handheld."[5] Mindray's contention that that the unit's subsequent attachment to a cart or desktop somehow prove that the unit cannot be "handheld" is a classic claim construction argument and should be rejected.

The same can be said of Mindray's argument that the TEX's "main unit" cannot be considered "handheld" because when held in one's hand it is supposedly not functional. D.I. 12 at 18. As with the TE7, the TEX's functionality in any given configuration is first a question of fact inappropriate for determination here. And again Mindray's position is an improper claim construction argument that must be rejected. The "broadest possible construction" of the term

---

[5] Teratech is not arguing that "capable of being held in one's hand" is the best or only construction of handheld, but merely offers this definition as an example of one of the many possible meanings within the "broadest possible construction" of the term.

"handheld" does not necessarily require any specific functionality.

Furthermore, there is no inconsistency in Teratech's pleading when considered under the appropriate standard. Teratech has alleged that the "main unit" of the TEX is "handheld" and Mindray has admitted that the main unit of the TEX can be removed from the cart, *by hand.* *Compare* D.I. 1-2 at 72, Ex. H at 1, 3, 6, 13, 19 *with* D.I. 12 at 18. This is sufficient to plausibly allege infringement of the '073 Patent by the TEX.

Therefore, under the "broadest possible construction" of the term, not only has Teratech sufficiently alleged infringement of the '699 and '073 Patents by the TE7 and TEX, Mindray has admitted as much. *See* D.I. 12 at 16-18. Because Mindray's non-infringement assertions rest solely on an improperly narrow construction of the "handheld" limitations, Mindray's Motion must be denied.

## V.   CONCLUSION

For the forgoing reasons, Plaintiff Teratech, Corp. d/b/a Terason respectfully requests that the Court **DENY** Defendants' Motion in its entirety.


Dated:  January 20, 2026

OF COUNSEL:

Leigh J. Martinson
Leah R. McCoy
MCCARTER & ENGLISH, LLP
265 Franklin St.
Boston, MA 02110
(617) 449-6500
lmartinson@mccarter.com
lmccoy@mccarter.com

MCCARTER & ENGLISH, LLP

/s/ *Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiff*
*Teratech, Inc. d/b/a Terason*

16

ME1\59686176.v1