# EXHIBIT A

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


ROCHE DIABETES CARE, INC.,    )
                              )
          Plaintiff,          )
                              ) C.A. No. 20-825(MN)
v.                            )
                              )
INSULET CORPORATION,          )
                              )
          Defendant.          )


                    Monday, January 11, 2021
                    10:00 a.m.
                    Motion to Dismiss (Remote)


                    844 King Street
                    Wilmington, Delaware



BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge



APPEARANCES:


          McCARTER & ENGLISH, LLP
          BY:  DANIEL M. SILVER, ESQ.

          -and-

          WILMER CUTLER PICKERING HALE & DORR, LLP
          BY:  OMAR A. KHAN, ESQ.
          BY:  ROBERT J. GUNTHER, JR., ESQ.


                    Counsel for the Plaintiff

APPEARANCES CONTINUED:


   YOUNG CONAWAY STARGATT & TAYLOR, LLP
   BY: ROBERT M. VRANA, ESQ.

   -and-

   WILLKIE FARR & GALLAGHER, LLP
   BY: THOMAS J. MELORO, ESQ.
   BY: MICHAEL W. JOHNSON, ESQ.
   BY: ERIC L. SAUNDERS, ESQ.

      Counsel for the Defendant


    - - - - - - - - - - -



   THE COURT:  Good morning, counsel.  Who is there, please?

   MR. SILVER:  Good morning, Your Honor.  Dan Silver from McCarter & English on behalf of the Plaintiff, Roche Diabetes Care.  I'm joined by Omar Khan and Robert Gunther from WilmerHale, and Mona Gupta from Roche Diabetes.

   THE COURT:  Good morning to all of you.

   For Defendants?

   MR. VRANA:  Good morning, Your Honor.  It's Robert Vrana from Young, Conaway on behalf of the Defendants.  And I'm joined this morning by Tom Meloro, Mike Johnson and Eric Saunders from Willkie Farr & Gallagher as well as Jonathan Perez from Insulet.

THE COURT: All right. Good morning to all of you as well. And thank you for being on the line. We're here for the arguments on the motion to dismiss, the willfulness claims, and the indirect infringement claims. We're doing this on the telephone and that presents a few challenges, but I'm sure that we can make it work.

I have the complaint with the attachments and Plaintiff's slides in front of me. I ask that if you refer me to something in any of those, you give me a minute or two to get the correct page so that I can follow your arguments.

One of the challenges of doing this remotely is that it's harder for me to ask questions. I'm on the phone and there is often a delay when I start talking such that the attorneys keep talking until I say "wait, wait" a few times because the system doesn't click over and let them hear that I'm asking a question. So I'll just ask you to be mindful to listen for any questions or maybe stop and take a breath every once in a while so that if I do have a question, I can jump in.

Additionally, when we're on the phone, you can't see visual cues that clue you in that I understand your argument and you can stop speaking. I find that lawyers keep talking much longer than necessary and I sometimes hear myself saying "stop talking." If I do that, I apologize, I don't mean to be impolite, I'm just trying to let you know

that I understand and I don't need to hear more on that particular topic.

I will ask that each time you begin speaking after someone else has spoken that you identify yourself. And finally, I will remind everyone on the phone that recording or broadcasting these proceedings is prohibited.

Are there any questions before we begin?

Okay.  Then let's start.  Who is going to be making the arguments for the Defendant?

MR. MELORO:  Good morning, Your Honor.  Tom Meloro from Willkie Farr.  May it please the Court, as the Court noted in the introductory comments, the motion to dismiss relates to the willful infringement and indirect infringement allegations in the complaint.  And the motion should be granted because there have not been plausible allegations set forth in the complaint regarding knowledge of the patent and knowledge of infringement, which are necessary predicates for the willful infringement and the indirect infringement claims.  I think the parties have addressed in the briefing those knowledge predicates similarly across the willfulness and the indirect infringement claims.  So in my remarks today, I will simply address them as applicable to all three.  And if the Court has questions about any distinctions or counsel draws any distinctions, I'll be happy to try to respond.

The patent as the Court is aware is an expired patent, the '613 Patent, and it was expired at the time that suit was filed.  And there is no allegation of actual knowledge of the '613 Patent by Insulet at any time during the existence of the patent, which is required here.

So what Roche has attempted to do is cobble together some indirect allegations, but those indirect allegations fall short of the line of plausibility that is the required standard to sustain the pleadings.  They're more like possibilities or perhaps allegations that are consistent with.  And the cases reject allegations that are simply consistent with the existence of a fact.  They must be plausible.

Turning to the knowledge of the patent question first, there were as I counted them five types of allegations that were made in the complaint.  I'll address each one individually.  There was some notion in the opposition brief that we were attempting to say that you only look at these one at a time and individually and we recognize that the case law looks at the totality of the pleadings, but ostensibly it makes sense to look at them one at a time.

And here, none of the allegations either taken alone or together rise to the level of plausible allegations that Insulet had knowledge of the '613 Patent prior to its

expiration.

The first -- as I wrote them down, anyway, in preparing today, the first allegation is that the '613 Patent allegedly was well-known because it had been cited according to the complaint a number of other times by third parties.  Simply having a well-known patent, even if true, and, of course, the allegations in the complaint are accepted as true today, is not sufficient even when combined with other factors, some of which Roche attempts to use in its opposition and in the complaint.

The *Dynamic Data* case cited in our papers makes clear that even where a patent is allegedly well-known, cited in other patents, or patents were even in the *Dynamic Data* case cited in a letter directly sent from the Plaintiff to the Defendants pre-suit, and even where an application that led to one of the patents-in-suit was cited by the Defendant, that was seemed to be insufficient to support plausible pleadings of knowledge of the patents pre-suit.

And the *Dynamic Data* case has facts that are much more extensive than the facts that Roche alleges which include this allegation of well-known.

The second factor that Roche cites is that there were two SEC filings that Roche pointed to.  They actually didn't point specifically in the complaint to any, but in their opposition they submitted a declaration that contains

SEC filings.  Those filings themselves are not part of the record itself on the motion, but they mention in the complaint that there were SEC filings that indicated some awareness of the possibility that Insulet could be sued for patent infringement.  And those allegations are simply insufficient to support knowledge of the '613 Patent itself.  The allegations were very generalized.  They did not mention any company at all.  They did not mention Roche specifically.  They did not mention any patents at all.  And certainly did not mention --

THE COURT:  But Mr. Meloro, how is it -- how am I supposed to look at this, though?  You're talking about each of these allegations individually, and saying each of them individually doesn't get me to a plausible inference of knowledge of the patent.  But don't I have to look at them altogether and if there is enough where they were known competitors, where Insulet was monitoring and investigating the patents of competitors, this was a well-known patent, I mean, sort of putting them all together can that get them to the standard even if perhaps individually some of these allegations are rather bare bones?

MR. MELORO:  You can put them all together, Your Honor, and that doesn't get them there in this place, in this case.  The fact that Insulet was aware that it might be sued for patent infringement because of the industry it

operated in does not arise even to an allegation that it was monitoring anyone else's patents, much less Roche's patents. And the fact that Roche alleges that it was a competitor in the field and alleges that it sold the product at some point that was marked with a patent number doesn't provide knowledge that Insulet knew of that patent much less the patent marking web page, much less that they accessed the web page and saw the '613 Patent.

And there are cases where those sorts of allegations were made and were deemed to be insufficient, *Dynamic Data* certainly being one, *DLSI* being another one, where there were allegations about the parties being competitors and about products being sold that were covered by the patents-in-suit. They're just very, very bare bone here and nothing that arises to the level of plausibility.

We're not saying that Roche needed to provide direct notification necessarily in order to sustain its claim here, but it is really surprising that for patents that were supposedly so well-known and Roche saying it was a competitor of Insulet that Roche sat silent and apparently didn't itself know that it had a patent that it thought might be infringed until after it was expired. In fact, a few weeks before --

THE COURT: Could I just ask a question? The *Dynamic Data* case as I see it says that -- it sort of looked

at the factual basis or factual allegations made individually and said yeah, that's not going to get you there.  I didn't see that they actually decided the issue of whether the bases taken together would be sufficiently plausible.  Isn't that right that the Court basically said they don't -- arguably they didn't, but they didn't need to address that issue?

MR. MELORO:  Well --

THE COURT:  I'm trying to understand if you're telling me that the *Dynamic Data* case actually found that the allegations taken as a whole did not plausibly allege pre-suit knowledge, pre-suit in that case, in that case, pre-expiration here.

MR. MELORO:  Yes, Your Honor.  Judge Connolly specifically made that finding when he reviewed Magistrate Judge Burke's reports and recommendations, and he said, "The complaint's factual allegations - considered individually or together - do not plausibly allege pre-suit knowledge of the asserted patents."

So that issue, I'm not sure that Magistrate Judge Burke explicitly said that in quite that clear of term in his report and recommendations, but Judge Connolly did in fact make that finding.

Here we had an instance where Roche three weeks before the patent expired wrote to Insulet to open a

licensing discussion.  And even at that point after all the years of Insulet being on the market, it didn't cite the '613 Patent.  It cited instead a German patent.  And Roche relies on that as somehow evidence that Insulet should have known of the '613 Patent.  But Roche itself didn't consider the '613 Patent relevant to the licensing discussion.

There simply was a complete disconnect between Roche and the '613 Patent and any allegations that even it had knowledge of Insulet of potentially infringing much less Insulet having knowledge of the patents and the fact that it was infringing the patent.  The cases that Roche cite are distinguishable.  The primary case that they cite is *Elm 3DS*.  In *Elm 3DS* there has been a presentation given by the inventor to the defendants about the company's technology. The inventor sent the copy of a parent patent, the patent-in-suit, directly to the defendants, and that parent patent plus others of the plaintiff which shared the same specification as the patent-in-suit were then cited by the defendant in their own patent prosecution.

Here we have nothing of the sort.  Roche makes an allegation that at one point in the prosecution of a European patent application of Insulet there was a citation to a foreign grandparent application which the allegation is that there was some common subject matter in disclosures, and that foreign grandparent was cited in a -- in an Insulet

foreign patent application.  The facts as I understand it, it was cited in a search report and then put into the specification per European rules, but that's not before the Court directly on this.  But there is simply nothing plausible that from that one-time citation of a foreign grandparent in a foreign Insulet patent that somehow Insulet as a company knew of the '613 Patent and knew that it was infringing the '613 Patent.  So *Elm* just simply is very different from the case that we have here.

They also cite the *Align* case.  The *Align* case talks about allegations of knowledge of the plaintiff's products.  There were cited patents, or some of the patents where family members were cited as prior art in the defendant's own patents.  And the accused products were deemed to be knockoffs in that case and there is no possibility that Insulet's product is a knockoff.  Insulet had its product out on the marketplace for many years before Roche even attempted to come to market with something, and before the Court on this motion, the Roche product simply isn't in the same league as the Insulet product.  There is not even an allegation of lost profits damages here.  There is simply no knockoff.

*InvestPic* was a case from almost a decade ago.  There was just a very brief mention of marked products.  *10X Genomics,* there were allegations of monitoring regularly the

plaintiff's patent portfolio.  There was a recruiting of employees by the defendant from the plaintiff and copying of technology by the defendant.  Those were the allegations.  There is nothing of the sort present in this case.

And *Salazar* cited by Roche is from the Eastern District of Texas.  That case simply said that marketing a product marked with a patent number was sufficient.  In this district there is no such bright line rule.

So in the end what we have is a situation where Insulet was selling products for many years openly, was very successful in the marketplace.  Roche said nothing, did nothing, and alleges nothing plausible regarding knowledge of the patent or knowledge of the infringement.

Your Honor, there is one last aspect that I would like to address, and that is the idea of willful blindness which is alleged.  It is alleged in a very bare bones way.  The Supreme Court in *Global Tech* says that willful blindness requires a subjective belief of a high probability of infringement, and then deliberate actions taken to avoid learning of the infringement.  And facts must be pled specifically on these two issues.  They just simply aren't alleged here.  There is no allegation of fact of Insulet taking actions to avoid learning of infringement.

As I said, the indirect infringement claims, *Global Tech* makes clear that knowledge of the patents and

knowledge of the infringement is required as well.

And lastly, there was some discussion in the papers about whether the complaint, these allegations in the complaint should be dismissed with prejudice or without prejudice.  Roche repeatedly asked for leave to amend in its opposition, but other than attempting to say they would more closely attuned to the *Global Tech* standards on willful blindness, they identify nothing that they could put into an amended complaint that would change the situation here so that the motion should be granted and the claims denied.

THE COURT:  Thank you.  Who is going to argue this for the Plaintiff?

MR. KHAN:  This is Omar Khan, Your Honor, for the Plaintiff.

THE COURT:  All right.  Mr. Khan, assume that I agree with Plaintiff that there is enough on a motion to dismiss to get you past the knowledge of the patents itself issue.  Tell me, I want you to focus me on the knowledge of infringement aspect when it seems like your allegations of infringement, they are a little bit vague as to time and it seems like timing is somewhat important here.  You know, you refer me to a chart attached to the patent, but that chart was attached to the patent at a time six months after the patent had expired.  So focus on that second aspect, knowledge of infringement prior to the expiration.

MR. KHAN:  Thank you, Your Honor.

So just starting from basic principles, the knowledge of the infringement can be averred generally under federal rules.  And we did exactly that which is --

THE COURT:  Right.  And if it were just -- if I were just saying look, we averred this generally, the patent is still good, whatever, that's fine.  I'm trying to figure out if you actually averred that they had this knowledge prior to the time that the patent expired in your complaint.

MR. KHAN:  And we did, Your Honor.  So we said that they, in paragraph 21 of the complaint, so I'm going to start with the broad statement, Your Honor, in the complaint that we made, and then support it with the factual allegations that support the broad statement.

So paragraph 21 of the complaint says that Insulet's infringement was willful and deliberate because Insulet knew of and/or knew in a past tense and was willfully blind to the '613 Patent and knew or should have known of the infringement but acted despite an objectively high likelihood such acts would infringe.  So where it's saying that they knew of the patent and knew of the infringement, what are the factual allegations that would support the notion of that general averment of knowledge of the infringement prior to the expiration.

So prior to the expiration, Your Honor, and the

manual is dated prior, there are manuals that are cited in their charts that are dated prior to the expiration, the SEC statements were prior to the expiration, so all of the evidence that you have in front of you in the complaint is prior the expiration of the patent.

If we start with the monitoring allegations which are relevant to the analysis of infringement, they are telling the investing public that essentially they are not just monitoring the competitor patents generally, but they are "increasingly worried about infringement claims" noting that they may, "may infringe third-party claims" and they are aware of competitor patents that could cover aspects of insulin infusion.

So in that context they are increasingly aware of claims, they think they may infringe and they're aware of at least some patents that cover aspect of insulin infusion devices.

Against that backdrop, if we assume that they had knowledge of the patent, which Your Honor asked us to assume, so now they had knowledge of the patent, they're increasingly worried about infringement claims, they're aware of competitors' patents covering aspects of infusion devices, and they're analyzing these patents which is also alleged in the complaint, what is the result of that analysis. And that's what the cases *3Shape, Align, Elm3DS*

focus on which is once knowledge of the patent had been established or sufficiently alleged, knowledge of the infringement merely requires a showing that the analysis of that patent would have resulted in an analysis of infringement.

And the way to do that is to show the how and the why of the infringement itself.  That's in the *3Shape* case, in the *Elm3DS* case, and we've done that in far more detail than the cases themselves require.  So we've alleged, for example, that the accused product utilizes the same technology and it functions in the same manner.  We have compared -- this is at page 7 of the complaint.  We've shown how the figures compare and are similar in the charts that are attached to the complaint element by element.  We've shown how Insulet's own videos and instructions, element by element, claim by claim, demonstrate infringement.  And that approach is right in line squarely with the *3Shape*, the *Tech.Bio, Bio-Rad* case and --

THE COURT:  Were any of those cases, though, talking about pre-expiration date?  I mean, if the patent was not expired at the time that the complaint was filed, it seems to me that's a different issue when I'm looking at a claims chart that's attached to the patent, isn't it?

MR. KHAN:  Correct, Your Honor.  And that's why we cited to you cases that focused on pre-suit knowledge of

infringement.  So in the *3Shape* and the other cases, the idea is that the analysis that was conducted, that that analysis would have resulted in a conclusion of infringement because the claim charts show what the analysis would have been.  And the allegations with respect to the infusion products operating in the same manner as the claims mention and the allegations with respect to utilizing the same technology, that those three or four pieces of factual detailed information put together allow a sufficient inference that in those cases, pre-suit knowledge of infringement was sufficiently alleged.

And we -- so we're only relying on that, on those cases to the extent that they discuss the pre-suit knowledge of infringement.  And that is analogous here insofar as we're talking about pre-suit knowledge of the infringement prior to the expiration of the patent.

And as I said, the manual, the SEC filings, all of the information and the factual information, and this is uncontested in the briefing is all dated and relevant to prior to the expiration of the patent.

And if I could just have a word on *Dynamic Data* which is I think the only case that they cite in their reply brief on either of the knowledge, the patent analysis or infringement prongs, you know, in *Dynamic Data* Judge Burke and Judge Connolly held essentially there was no explanation

of how or why of the infringement.  And the -- because they relied so heavily on it in their reply brief, we went back to the docket and checked the complaint.  And there weren't any claim charts or other detailed allegations of infringement or at least as far as we could see that were included in the complaint there which makes that case completely inapplicable here because here we have provided as the other cases require the how and the why of the infringement.

THE COURT:  Okay.  Thank you.

Mr. Meloro, do you want to respond?

MR. KHAN:  If I could just address the willful blindness issue, Your Honor, because I think that's connected to knowledge of infringement.  So I think Mr. Meloro argued that the *Global Tech* and other cases requires deliberate action.  And that's true.  But they don't cite a single case that says that you can't infer deliberate action or deliberate avoidance, which is exactly what we've done.

The *Suprema* case and all the other cases that are cited in slide 14 of the Plaintiff's slides, all of those cases take the factual allegations and many of the factual allegations that are recited in the complaint here, and then conclude that either the jury could infer deliberate avoidance based on those facts or on a motion to

dismiss conclude that there was enough stated to move forward on willful blindness.

That also, Your Honor, just for completeness I wanted to mention that because it relates to your question on knowledge of infringement.

THE COURT:  Thank you.

Mr. Meloro, a brief reply.

MR. MELORO:  Thank you, Your Honor.

With regard to the knowledge of infringement, it really comes down to the allegation that the SEC filing somehow directs them back in time into a pre-patent expiration situation.

THE COURT:  Do you dispute that the assertion that Mr. Khan made about, that the documents that they're pointing to were dated pre-expiration?

MR. MELORO:  The SEC documents?

THE COURT:  Yes.

MR. MELORO:  Your Honor, yes, they were dated pre-expiration.  The products had been on the market, the insulin products had been on the market for a decade or more at that point in time, and the SEC documents said that we could be increasingly subject to claims as our revenue increases, the number of competitors grows and the functionality of products and technology overlaps.  That's a forward looking risks assessment for a product.  This

product had been on the market already, and the only reason there is not a damages allegations apparently for the times before six years ago is because the six-year statute of limitations.  There is nothing in that SEC filing that says that Insulet is monitoring competitors' patents.  That snuck into the brief of Roche.  It says that they are aware of patents, but it does not say there is any affirmative monitoring going on.

The fact of the matter is that this was post-expiration that Roche mentioned the patent.  It's post-expiration that Roche put any claim charts together.  This is all post-expiration activity.

And the *3Shape* case which counsel cited, I just would like to point out the defendant filed an IPR on the patent-in-suit prior to the suit being filed.  And that was a factor that the Court relied on heavily in saying not only was there knowledge of the patent, but knowledge of infringement, that somebody went to the trouble of filing an IPR on a patent had probably done a detailed analysis of that patent.

THE COURT:  Okay.  Thank you.  Just give me a minute here.

(Pause.)

Okay.  Thanks for the arguments.

We are here on Defendant's motion to dismiss

Plaintiff's claims of willfulness and indirect infringement.

The main thrust of the motion is that Plaintiff has not adequately alleged pre-expiration knowledge of the '613 Patent and its infringement - which is required to state a claim for willfulness as well as inducement and contributory infringement.  I have to say that this motion is a really close call, but I think that there is enough in the allegations that, applying the appropriate standards on a motion to dismiss, I am going to deny the motion.

Here, the allegations of knowledge of the patent include that the parties are sophisticated competitors in the diabetes care market, Defendant was aware of and investigated the patents of its competitors and acknowledged that competitors had relevant patents, that Plaintiff sold products that compete with Defendant, including at least one product that was marked with the '613 Patent.  Plaintiff also alleges that the '613 Patent was known in the industry and that Defendant had specific knowledge of the '613 Patent family.

As I mentioned earlier to Plaintiff's counsel, the allegations as to knowledge of infringement pre-expiration are somewhat vague as to timing.  But Plaintiff does allege that the accused product uses the '613 Patent and provides examples of how and why with claim charts.  And Plaintiff alleges that Defendant not only knew

of the '613 Patent but that prior to expiration Defendant was aware that infringement claims may be coming, that it may infringe patents and that it was monitoring and investigating competitors' patents for possible infringement claims.

I don't know that Plaintiff will ultimately be able to prove knowledge of infringement or willful blindness, but consistent with the pleadings standards as I understand them, I think that Plaintiff has made a sufficient showing to get by a motion to dismiss.

So that's my ruling on the motion.  Is there anything else that we need to discuss while we are on the phone today?

From the Plaintiff?

MR. KHAN:  No, Your Honor, nothing further.

THE COURT:  Mr. Meloro, for the Defendant?

MR. MELORO:  No, Your Honor.  Thank you, Your Honor.

THE COURT:  All right.  Thank you very much, everyone.  Have a good rest of the week.

(Teleconference concluded at 10:37 a.m.)

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Dale C. Hawkins
Official Court Reporter
U.S. District Court

**'**

**'613** [19] - 5:2, 5:4, 5:25, 6:3, 7:6, 8:8, 10:3, 10:5, 10:6, 10:8, 11:7, 11:8, 14:18, 21:4, 21:16, 21:17, 21:18, 21:23, 22:1

**/**

**/s** [1] - 22:24

**1**

**10:00** [1] - 1:10
**10:37** [1] - 22:21
**10X** [1] - 11:24
**11** [1] - 1:10
**14** [1] - 18:21

**2**

**20-825(MN** [1] - 1:5
**2021** [1] - 1:10
**21** [2] - 14:11, 14:15

**3**

**3DS** [2] - 10:13
**3Shape** [5] - 15:25, 16:7, 16:17, 17:1, 20:13

**7**

**7** [1] - 16:12

**8**

**844** [1] - 1:12

**A**

**a.m** [2] - 1:10, 22:21
**able** [1] - 22:7
**accepted** [1] - 6:8
**accessed** [1] - 8:7
**according** [1] - 6:5
**accurate** [1] - 22:22
**accused** [3] - 11:14, 16:10, 21:23
**acknowledged** [1] - 21:13
**acted** [1] - 14:19
**action** [2] - 18:16, 18:18
**actions** [2] - 12:19, 12:23

**activity** [1] - 20:12
**acts** [1] - 14:20
**actual** [1] - 5:3
**additionally** [1] - 3:20
**address** [5] - 4:23, 5:16, 9:7, 12:15, 18:12
**addressed** [1] - 4:20
**adequately** [1] - 21:3
**ago** [2] - 11:23, 20:3
**agree** [1] - 13:16
**Align** [3] - 11:10, 15:25
**allegation** [9] - 5:3, 6:3, 6:21, 8:1, 10:21, 10:23, 11:21, 12:22, 19:10
**allegations** [37] - 4:14, 4:16, 5:7, 5:8, 5:10, 5:11, 5:16, 5:23, 5:24, 6:7, 7:5, 7:7, 7:13, 7:21, 8:10, 8:12, 9:1, 9:11, 9:17, 10:8, 11:11, 11:25, 12:3, 13:3, 13:19, 14:14, 14:22, 15:6, 17:5, 17:7, 18:4, 18:22, 18:23, 20:2, 21:8, 21:10, 21:21
**allege** [3] - 9:11, 9:18, 21:23
**alleged** [8] - 12:16, 12:22, 15:24, 16:2, 16:9, 17:11, 21:3
**allegedly** [2] - 6:4, 6:12
**alleges** [6] - 6:20, 8:3, 8:4, 12:12, 21:17, 21:25
**allow** [1] - 17:9
**almost** [1] - 11:23
**alone** [1] - 5:24
**altogether** [1] - 7:16
**amend** [1] - 13:5
**amended** [1] - 13:9
**analogous** [1] - 17:14
**analysis** [9] - 15:7, 15:25, 16:3, 16:4, 17:2, 17:3, 17:4, 17:23, 20:19
**analyzing** [1] - 15:23
**anyway** [1] - 6:2
**apologize** [1] - 3:24
**APPEARANCES** [2] - 1:18, 2:1
**applicable** [1] - 4:23
**application** [4] - 6:15, 10:22, 10:23, 11:1
**applying** [1] - 21:8
**approach** [1] - 16:17

**appropriate** [1] - 21:8
**arguably** [1] - 9:6
**argue** [1] - 13:11
**argued** [1] - 18:15
**argument** [1] - 3:22
**arguments** [4] - 3:3, 3:10, 4:9, 20:24
**arise** [1] - 8:1
**arises** [1] - 8:15
**art** [1] - 11:13
**aspect** [4] - 12:14, 13:19, 13:24, 15:16
**aspects** [2] - 15:12, 15:22
**asserted** [1] - 9:19
**assertion** [1] - 19:13
**assessment** [1] - 19:25
**assume** [3] - 13:15, 15:18, 15:20
**attached** [4] - 13:22, 13:23, 16:14, 16:23
**attachments** [1] - 3:7
**attempted** [2] - 5:6, 11:18
**attempting** [2] - 5:18, 13:6
**attempts** [1] - 6:9
**attorneys** [1] - 3:14
**attuned** [1] - 13:7
**averment** [1] - 14:23
**averred** [3] - 14:3, 14:6, 14:8
**avoid** [2] - 12:20, 12:23
**avoidance** [2] - 18:18, 18:25
**aware** [9] - 5:1, 7:24, 15:12, 15:14, 15:15, 15:22, 20:6, 21:12, 22:2
**awareness** [1] - 7:4

**B**

**backdrop** [1] - 15:18
**bare** [3] - 7:21, 8:14, 12:16
**based** [1] - 18:25
**bases** [1] - 9:4
**basic** [1] - 14:2
**basis** [1] - 9:1
**BEFORE** [1] - 1:15
**begin** [2] - 4:3, 4:7
**behalf** [2] - 2:16, 2:22
**belief** [1] - 12:18
**between** [1] - 10:7
**Bio** [1] - 16:18
**Bio-Rad** [1] - 16:18
**bit** [1] - 13:20

**blind** [1] - 14:18
**blindness** [6] - 12:16, 12:18, 13:8, 18:13, 19:2, 22:8
**bone** [1] - 8:14
**bones** [2] - 7:21, 12:17
**breath** [1] - 3:18
**brief** [6] - 5:18, 11:24, 17:23, 18:2, 19:7, 20:6
**briefing** [2] - 4:20, 17:19
**bright** [1] - 12:8
**broad** [2] - 14:12, 14:14
**broadcasting** [1] - 4:6
**Burke** [2] - 9:21, 17:24
**Burke's** [1] - 9:16
**BY** [7] - 1:20, 1:22, 1:23, 2:3, 2:6, 2:6, 2:7

**C**

**C.A** [1] - 1:5
**Care** [1] - 2:17
**CARE** [1] - 1:4
**care** [1] - 21:12
**case** [25] - 5:20, 6:11, 6:14, 6:19, 7:24, 8:25, 9:10, 9:12, 10:12, 11:9, 11:10, 11:15, 11:23, 12:4, 12:6, 16:8, 16:18, 17:22, 18:6, 18:17, 18:20, 20:13
**cases** [14] - 5:11, 8:9, 10:11, 15:25, 16:9, 16:19, 16:25, 17:1, 17:10, 17:13, 18:8, 18:15, 18:20, 18:22
**certainly** [2] - 7:10, 8:11
**certify** [1] - 22:22
**challenges** [2] - 3:6, 3:11
**change** [1] - 13:9
**chart** [3] - 13:22, 16:23
**charts** [6] - 15:2, 16:13, 17:4, 18:4, 20:11, 21:25
**checked** [1] - 18:3
**citation** [2] - 10:22, 11:5
**cite** [6] - 10:2, 10:11, 10:12, 11:10, 17:22, 18:17
**cited** [16] - 6:4, 6:11,

6:13, 6:14, 6:16, 10:3, 10:18, 10:25, 11:2, 11:12, 11:13, 12:5, 15:1, 16:25, 18:21, 20:13
**cites** [1] - 6:22
**claim** [8] - 8:18, 16:16, 17:4, 18:4, 20:11, 21:5, 21:24
**claims** [16] - 3:4, 4:19, 4:22, 12:24, 13:10, 15:10, 15:11, 15:15, 15:21, 16:23, 17:6, 19:22, 21:1, 22:2, 22:5
**clear** [3] - 6:12, 9:21, 12:25
**click** [1] - 3:15
**close** [1] - 21:7
**closely** [1] - 13:7
**clue** [1] - 3:21
**cobble** [1] - 5:6
**combined** [1] - 6:8
**coming** [1] - 22:2
**comments** [1] - 4:12
**common** [1] - 10:24
**company** [2] - 7:8, 11:7
**company's** [1] - 10:14
**compare** [1] - 16:13
**compared** [1] - 16:12
**compete** [1] - 21:15
**competitor** [4] - 8:3, 8:20, 15:9, 15:12
**competitors** [7] - 7:17, 7:18, 8:13, 19:23, 21:11, 21:13, 21:14
**competitors'** [3] - 15:22, 20:5, 22:4
**complaint** [24] - 3:7, 4:14, 4:16, 5:16, 6:5, 6:7, 6:10, 6:24, 7:3, 13:3, 13:4, 13:9, 14:9, 14:11, 14:12, 14:15, 15:4, 15:24, 16:12, 16:14, 16:21, 18:3, 18:6, 18:23
**complaint's** [1] - 9:17
**complete** [1] - 10:7
**completely** [1] - 18:7
**completeness** [1] - 19:3
**CONAWAY** [1] - 2:3
**Conaway** [1] - 2:22
**conclude** [2] - 18:24, 19:1
**concluded** [1] - 22:21
**conclusion** [1] - 17:3
**conducted** [1] - 17:2

**connected** [1] - 18:14
**Connolly** [3] - 9:14, 9:22, 17:25
**consider** [1] - 10:5
**considered** [1] - 9:17
**consistent** [3] - 5:11, 5:12, 22:8
**contains** [1] - 6:25
**context** [1] - 15:14
**CONTINUED** [1] - 2:1
**contributory** [1] - 21:6
**copy** [1] - 10:15
**copying** [1] - 12:2
**CORPORATION** [1] - 1:7
**correct** [2] - 3:10, 16:24
**Counsel** [2] - 1:24, 2:8
**counsel** [4] - 2:13, 4:24, 20:13, 21:20
**counted** [1] - 5:15
**course** [1] - 6:7
**COURT** [18] - 1:1, 2:13, 2:19, 3:1, 7:11, 8:24, 9:9, 13:11, 13:15, 14:5, 16:19, 18:10, 19:6, 19:13, 19:17, 20:21, 22:16, 22:19
**Court** [12] - 1:15, 4:11, 4:12, 4:23, 5:1, 9:5, 11:4, 11:19, 12:17, 20:16, 22:24, 22:25
**cover** [2] - 15:12, 15:16
**covered** [1] - 8:13
**covering** [1] - 15:22
**cues** [1] - 3:21
**CUTLER** [1] - 1:22

**D**

**Dale** [1] - 22:24
**damages** [2] - 11:21, 20:2
**Dan** [1] - 2:15
**DANIEL** [1] - 1:20
**Data** [8] - 6:11, 6:14, 6:19, 8:11, 8:25, 9:10, 17:21, 17:24
**date** [1] - 16:20
**dated** [5] - 15:1, 15:2, 17:19, 19:15, 19:18
**decade** [2] - 11:23, 19:20
**decided** [1] - 9:3
**declaration** [1] - 6:25
**deemed** [2] - 8:10, 11:15
**defendant** [4] - 10:19,

12:2, 12:3, 20:14
**Defendant** [10] - 1:8, 2:8, 4:9, 6:17, 21:12, 21:15, 21:18, 21:25, 22:1, 22:16
**Defendant's** [1] - 20:25
**defendant's** [1] - 11:14
**Defendants** [3] - 2:20, 2:23, 6:15
**defendants** [2] - 10:14, 10:16
**DELAWARE** [1] - 1:2
**Delaware** [1] - 1:13
**delay** [1] - 3:13
**deliberate** [6] - 12:19, 14:16, 18:16, 18:18, 18:25
**demonstrate** [1] - 16:16
**denied** [1] - 13:10
**deny** [1] - 21:9
**despite** [1] - 14:19
**detail** [1] - 16:9
**detailed** [3] - 17:9, 18:4, 20:19
**devices** [2] - 15:17, 15:23
**DIABETES** [1] - 1:4
**diabetes** [1] - 21:12
**Diabetes** [2] - 2:17, 2:18
**different** [2] - 11:9, 16:22
**direct** [1] - 8:17
**directly** [3] - 6:14, 10:16, 11:4
**directs** [1] - 19:11
**disclosures** [1] - 10:24
**disconnect** [1] - 10:7
**discuss** [2] - 17:13, 22:12
**discussion** [3] - 10:1, 10:6, 13:2
**Dismiss** [1] - 1:11
**dismiss** [7] - 3:3, 4:13, 13:17, 19:1, 20:25, 21:9, 22:10
**dismissed** [1] - 13:4
**dispute** [1] - 19:13
**distinctions** [2] - 4:24, 4:25
**distinguishable** [1] - 10:12
**district** [1] - 12:8
**DISTRICT** [2] - 1:1, 1:2
**District** [3] - 1:15, 12:6, 22:25

**DLSI** [1] - 8:11
**docket** [1] - 18:3
**documents** [3] - 19:14, 19:16, 19:21
**done** [3] - 16:8, 18:19, 20:19
**DORR** [1] - 1:22
**down** [2] - 6:2, 19:10
**draws** [1] - 4:24
**during** [1] - 5:4
**Dynamic** [8] - 6:11, 6:13, 6:19, 8:11, 8:25, 9:10, 17:21, 17:24

**E**

**Eastern** [1] - 12:5
**either** [3] - 5:23, 17:23, 18:24
**element** [4] - 16:14, 16:15, 16:16
**Elm** [3] - 10:12, 10:13, 11:8
**Elm3DS** [2] - 15:25, 16:8
**employees** [1] - 12:2
**end** [1] - 12:9
**English** [1] - 2:16
**ENGLISH** [1] - 1:19
**ERIC** [1] - 2:7
**Eric** [1] - 2:24
**ESQ** [7] - 1:20, 1:22, 1:23, 2:3, 2:6, 2:6, 2:7
**essentially** [2] - 15:8, 17:25
**established** [1] - 16:2
**European** [2] - 10:22, 11:3
**evidence** [2] - 10:4, 15:4
**exactly** [2] - 14:4, 18:18
**example** [1] - 16:10
**examples** [1] - 21:24
**existence** [2] - 5:5, 5:12
**expiration** [20] - 6:1, 9:13, 13:25, 14:24, 14:25, 15:2, 15:3, 15:5, 16:20, 17:16, 17:20, 19:12, 19:15, 19:19, 20:10, 20:11, 20:12, 21:3, 21:22, 22:1
**expired** [7] - 5:1, 5:2, 8:22, 9:25, 13:24, 14:9, 16:21
**explanation** [1] -

17:25
**explicitly** [1] - 9:21
**extensive** [1] - 6:20
**extent** [1] - 17:13

**F**

**fact** [8] - 5:12, 7:24, 8:3, 8:22, 9:23, 10:10, 12:22, 20:9
**factor** [2] - 6:22, 20:16
**factors** [1] - 6:9
**facts** [5] - 6:19, 6:20, 11:1, 12:20, 18:25
**factual** [9] - 9:1, 9:17, 14:13, 14:22, 17:8, 17:18, 18:22, 18:23
**fall** [1] - 5:8
**family** [2] - 11:13, 21:19
**far** [2] - 16:8, 18:5
**FARR** [1] - 2:5
**Farr** [2] - 2:24, 4:11
**federal** [1] - 14:4
**few** [3] - 3:5, 3:14, 8:23
**field** [1] - 8:4
**figure** [1] - 14:7
**figures** [1] - 16:13
**filed** [4] - 5:3, 16:21, 20:14, 20:15
**filing** [3] - 19:10, 20:4, 20:18
**filings** [5] - 6:23, 7:1, 7:3, 17:17
**finally** [1] - 4:5
**fine** [1] - 14:7
**first** [3] - 5:15, 6:2, 6:3
**five** [1] - 5:15
**focus** [3] - 13:18, 13:24, 16:1
**focused** [1] - 16:25
**follow** [1] - 3:10
**FOR** [1] - 1:2
**foregoing** [1] - 22:22
**foreign** [5] - 10:23, 10:25, 11:1, 11:5, 11:6
**forth** [1] - 4:16
**forward** [2] - 19:2, 19:25
**four** [1] - 17:8
**front** [2] - 3:8, 15:4
**functionality** [1] - 19:24
**functions** [1] - 16:11

**G**

**GALLAGHER** [1] - 2:5

**Gallagher** [1] - 2:24
**general** [1] - 14:23
**generalized** [1] - 7:7
**generally** [3] - 14:3, 14:6, 15:9
**Genomics** [1] - 11:25
**German** [1] - 10:3
**given** [1] - 10:13
**Global** [4] - 12:17, 12:25, 13:7, 18:15
**grandparent** [3] - 10:23, 10:25, 11:6
**granted** [2] - 4:15, 13:10
**grows** [1] - 19:23
**Gunther** [1] - 2:18
**GUNTHER** [1] - 1:23
**Gupta** [1] - 2:18

**H**

**HALE** [1] - 1:22
**happy** [1] - 4:25
**harder** [1] - 3:12
**Hawkins** [1] - 22:24
**hear** [3] - 3:16, 3:23, 4:1
**heavily** [2] - 18:2, 20:16
**held** [1] - 17:25
**hereby** [1] - 22:22
**high** [2] - 12:18, 14:20
**Honor** [20] - 2:15, 2:21, 4:10, 7:23, 9:14, 12:14, 13:13, 14:1, 14:10, 14:12, 14:25, 15:19, 16:24, 18:13, 19:3, 19:8, 19:18, 22:15, 22:17, 22:18
**HONORABLE** [1] - 1:15

**I**

**idea** [2] - 12:15, 17:2
**identify** [2] - 4:4, 13:8
**impolite** [1] - 3:25
**important** [1] - 13:21
**IN** [1] - 1:1
**inapplicable** [1] - 18:7
**INC** [1] - 1:4
**include** [2] - 6:21, 21:11
**included** [1] - 18:6
**including** [1] - 21:15
**increases** [1] - 19:23
**increasingly** [4] - 15:10, 15:14, 15:21, 19:22

**indicated** [1] - 7:3
**indirect** [8] - 3:4, 4:13, 4:19, 4:21, 5:7, 12:24, 21:1
**individually** [7] - 5:17, 5:19, 7:13, 7:14, 7:20, 9:2, 9:17
**inducement** [1] - 21:5
**industry** [2] - 7:25, 21:17
**infer** [2] - 18:17, 18:24
**inference** [2] - 7:14, 17:10
**information** [3] - 17:9, 17:18
**infringe** [4] - 14:20, 15:11, 15:15, 22:3
**infringed** [1] - 8:22
**infringement** [50] - 3:4, 4:13, 4:14, 4:17, 4:18, 4:19, 4:22, 7:5, 7:25, 12:13, 12:19, 12:20, 12:23, 12:24, 13:1, 13:19, 13:20, 13:25, 14:3, 14:16, 14:19, 14:22, 14:24, 15:7, 15:10, 15:21, 16:3, 16:5, 16:7, 16:16, 17:1, 17:3, 17:11, 17:14, 17:16, 17:24, 18:1, 18:5, 18:9, 18:14, 19:5, 19:9, 20:18, 21:1, 21:4, 21:6, 21:21, 22:2, 22:4, 22:7
**infringing** [3] - 10:9, 10:11, 11:8
**infusion** [4] - 15:13, 15:16, 15:22, 17:5
**insofar** [1] - 17:15
**instance** [1] - 9:24
**instead** [1] - 10:3
**instructions** [1] - 16:15
**insufficient** [3] - 6:17, 7:6, 8:10
**Insulet** [23] - 2:25, 5:4, 5:25, 7:4, 7:17, 7:24, 8:6, 8:20, 9:25, 10:2, 10:4, 10:9, 10:10, 10:22, 10:25, 11:6, 11:16, 11:20, 12:10, 12:23, 14:17, 20:5
**INSULET** [1] - 1:7
**Insulet's** [3] - 11:16, 14:16, 16:15
**insulin** [3] - 15:13, 15:16, 19:20
**introductory** [1] - 4:12
**inventor** [2] - 10:14,

10:15
**investigated** [1] - 21:13
**investigating** [2] - 7:17, 22:4
**investing** [1] - 15:8
**investPic** [1] - 11:23
**IPR** [2] - 20:14, 20:19
**issue** [6] - 9:3, 9:7, 9:20, 13:18, 16:22, 18:13
**issues** [1] - 12:21
**itself** [6] - 7:2, 7:6, 8:21, 10:5, 13:17, 16:7

## J

**January** [1] - 1:10
**JOHNSON** [1] - 2:6
**Johnson** [1] - 2:24
**joined** [2] - 2:17, 2:23
**Jonathan** [1] - 2:25
**JR** [1] - 1:23
**Judge** [7] - 1:15, 9:14, 9:16, 9:21, 9:22, 17:24, 17:25
**jump** [1] - 3:19
**jury** [1] - 18:24

## K

**keep** [2] - 3:14, 3:23
**Khan** [4] - 2:17, 13:13, 13:15, 19:14
**KHAN** [7] - 1:22, 13:13, 14:1, 14:10, 16:24, 18:12, 22:15
**King** [1] - 1:12
**knockoff** [2] - 11:16, 11:22
**knockoffs** [1] - 11:15
**knowledge** [44] - 4:16, 4:17, 4:20, 5:4, 5:14, 5:25, 6:18, 7:6, 7:15, 8:6, 9:12, 9:18, 10:9, 10:10, 11:11, 12:12, 12:13, 12:25, 13:1, 13:17, 13:18, 13:25, 14:3, 14:8, 14:23, 15:19, 15:20, 16:1, 16:2, 16:25, 17:10, 17:14, 17:15, 17:23, 18:14, 19:5, 19:9, 20:17, 21:3, 21:10, 21:18, 21:21, 22:7
**known** [10] - 6:4, 6:6, 6:12, 6:21, 7:16, 7:18, 8:19, 10:5, 14:19, 21:17

## L

**last** [1] - 12:14
**lastly** [1] - 13:2
**law** [1] - 5:20
**lawyers** [1] - 3:22
**league** [1] - 11:20
**learning** [2] - 12:20, 12:23
**least** [3] - 15:16, 18:5, 21:15
**leave** [1] - 13:5
**led** [1] - 6:16
**less** [4] - 8:2, 8:6, 8:7, 10:9
**letter** [1] - 6:14
**level** [2] - 5:24, 8:15
**licensing** [2] - 10:1, 10:6
**likelihood** [1] - 14:20
**limitations** [1] - 20:4
**line** [4] - 3:2, 5:8, 12:8, 16:17
**listen** [1] - 3:17
**LLP** [4] - 1:19, 1:22, 2:3, 2:5
**look** [5] - 5:19, 5:21, 7:12, 7:15, 14:6
**looked** [1] - 8:25
**looking** [2] - 16:22, 19:25
**looks** [1] - 5:20
**lost** [1] - 11:21

## M

**Magistrate** [2] - 9:15, 9:20
**main** [1] - 21:2
**manner** [2] - 16:11, 17:6
**manual** [2] - 15:1, 17:17
**manuals** [1] - 15:1
**marked** [4] - 8:5, 11:24, 12:7, 21:16
**market** [6] - 10:2, 11:18, 19:19, 19:20, 20:1, 21:12
**marketing** [1] - 12:6
**marketplace** [2] - 11:17, 12:11
**marking** [1] - 8:7
**MARYELLEN** [1] - 1:15
**matter** [2] - 10:24, 20:9
**McCarter** [2] - 1:19, 2:16
**mean** [3] - 3:25, 7:19,

16:20
**MELORO** [9] - 2:6, 4:10, 7:22, 9:8, 9:14, 19:8, 19:16, 19:18, 22:17
**Meloro** [7] - 2:23, 4:11, 7:11, 18:11, 18:15, 19:7, 22:16
**members** [1] - 11:13
**mention** [8] - 7:2, 7:7, 7:8, 7:9, 7:10, 11:24, 17:6, 19:4
**mentioned** [2] - 20:10, 21:20
**merely** [1] - 16:3
**MICHAEL** [1] - 2:6
**might** [2] - 7:24, 8:22
**Mike** [1] - 2:23
**mindful** [1] - 3:17
**minute** [2] - 3:9, 20:22
**Mona** [1] - 2:18
**Monday** [1] - 1:10
**monitoring** [8] - 7:17, 8:2, 11:25, 15:6, 15:9, 20:5, 20:8, 22:3
**months** [1] - 13:23
**morning** [7] - 2:13, 2:15, 2:19, 2:21, 2:23, 3:1, 4:10
**Motion** [1] - 1:11
**motion** [15] - 3:3, 4:12, 4:14, 7:2, 11:19, 13:10, 13:16, 18:25, 20:25, 21:2, 21:6, 21:9, 22:10, 22:11
**move** [1] - 19:1
**MR** [16] - 2:15, 2:21, 4:10, 7:22, 9:8, 9:14, 13:13, 14:1, 14:10, 16:24, 18:12, 19:8, 19:16, 19:18, 22:15, 22:17
**must** [2] - 5:12, 12:20

## N

**necessarily** [1] - 8:17
**necessary** [2] - 3:23, 4:18
**need** [3] - 4:1, 9:6, 22:12
**needed** [1] - 8:16
**none** [1] - 5:23
**NOREIKA** [1] - 1:15
**noted** [1] - 4:12
**notes** [1] - 22:22
**nothing** [10] - 8:15, 10:20, 11:4, 12:4,

12:11, 12:12, 13:8, 20:4, 22:15
**notification** [1] - 8:17
**noting** [1] - 15:10
**notion** [2] - 5:17, 14:23
**number** [4] - 6:5, 8:5, 12:7, 19:23

## O

**objectively** [1] - 14:19
**OF** [1] - 1:2
**Official** [1] - 22:24
**often** [1] - 3:13
**Omar** [2] - 2:17, 13:13
**OMAR** [1] - 1:22
**once** [2] - 3:18, 16:1
**one** [11] - 3:11, 5:17, 5:19, 5:21, 6:16, 8:11, 10:21, 11:5, 12:14, 21:15
**one-time** [1] - 11:5
**open** [1] - 9:25
**openly** [1] - 12:10
**operated** [1] - 8:1
**operating** [1] - 17:6
**opposition** [4] - 5:18, 6:10, 6:25, 13:6
**order** [1] - 8:17
**ostensibly** [1] - 5:21
**overlaps** [1] - 19:24
**own** [3] - 10:19, 11:14, 16:15

## P

**page** [4] - 3:10, 8:7, 8:8, 16:12
**papers** [2] - 6:11, 13:3
**paragraph** [2] - 14:11, 14:15
**parent** [2] - 10:15, 10:16
**part** [1] - 7:1
**particular** [1] - 4:2
**parties** [4] - 4:19, 6:6, 8:12, 21:11
**party** [1] - 15:11
**past** [2] - 13:17, 14:17
**patent** [52] - 4:17, 5:1, 5:2, 5:5, 5:14, 6:6, 6:12, 7:5, 7:15, 7:18, 7:25, 8:5, 8:6, 8:7, 8:21, 9:25, 10:3, 10:11, 10:15, 10:16, 10:17, 10:18, 10:19, 10:22, 11:1, 11:6, 12:1, 12:7, 12:13, 13:22, 13:23, 13:24,

14:6, 14:9, 14:21, 15:5, 15:19, 15:20, 16:1, 16:4, 16:20, 16:23, 17:16, 17:20, 17:23, 19:11, 20:10, 20:15, 20:17, 20:19, 20:20, 21:10
**Patent** [19] - 5:2, 5:4, 5:25, 6:4, 7:6, 8:8, 10:3, 10:5, 10:6, 10:8, 11:7, 11:8, 14:18, 21:4, 21:16, 21:17, 21:18, 21:24, 22:1
**patent-in-suit** [3] - 10:16, 10:18, 20:15
**patents** [28] - 6:13, 6:16, 6:18, 7:9, 7:18, 8:2, 8:14, 8:18, 9:19, 10:10, 11:12, 11:14, 12:25, 13:17, 15:9, 15:12, 15:16, 15:22, 15:23, 20:5, 20:7, 21:13, 21:14, 22:3, 22:4
**patents-in-suit** [2] - 6:16, 8:14
**pause** [1] - 20:23
**per** [1] - 11:3
**Perez** [1] - 2:25
**perhaps** [2] - 5:10, 7:20
**phone** [4] - 3:12, 3:20, 4:5, 22:13
**PICKERING** [1] - 1:22
**pieces** [1] - 17:8
**place** [1] - 7:23
**plaintiff** [3] - 10:17, 12:2, 21:16
**Plaintiff** [14] - 1:5, 1:24, 2:16, 6:14, 13:12, 13:14, 13:16, 21:2, 21:14, 21:23, 21:25, 22:6, 22:9, 22:14
**Plaintiff's** [4] - 3:8, 18:21, 21:1, 21:20
**plaintiff's** [2] - 11:11, 12:1
**plausibility** [2] - 5:8, 8:15
**plausible** [8] - 4:15, 5:13, 5:24, 6:18, 7:14, 9:5, 11:5, 12:12
**plausibly** [2] - 9:11, 9:18
**pleadings** [4] - 5:9, 5:21, 6:18, 22:8
**pled** [1] - 12:21

**plus** [1] - 10:17
**point** [6] - 6:24, 8:4, 10:1, 10:21, 19:21, 20:14
**pointed** [1] - 6:23
**pointing** [1] - 19:15
**portfolio** [1] - 12:1
**possibilities** [1] - 5:10
**possibility** [2] - 7:4, 11:16
**possible** [1] - 22:4
**post** [3] - 20:10, 20:11, 20:12
**post-expiration** [3] - 20:10, 20:11, 20:12
**potentially** [1] - 10:9
**pre** [16] - 6:15, 6:18, 9:12, 9:13, 9:18, 16:20, 16:25, 17:10, 17:13, 17:15, 19:11, 19:15, 19:19, 21:3, 21:22
**pre-expiration** [6] - 9:13, 16:20, 19:15, 19:19, 21:3, 21:22
**pre-patent** [1] - 19:11
**pre-suit** [9] - 6:15, 6:18, 9:12, 9:18, 16:25, 17:10, 17:13, 17:15
**predicates** [2] - 4:18, 4:20
**prejudice** [2] - 13:4, 13:5
**preparing** [1] - 6:3
**present** [1] - 12:4
**presentation** [1] - 10:13
**presents** [1] - 3:5
**primary** [1] - 10:12
**principles** [1] - 14:2
**probability** [1] - 12:19
**proceeding** [1] - 22:22
**proceedings** [1] - 4:6
**product** [11] - 8:4, 11:16, 11:17, 11:19, 11:20, 12:7, 16:10, 19:25, 20:1, 21:16, 21:23
**products** [10] - 8:13, 11:12, 11:14, 11:24, 12:10, 17:6, 19:19, 19:20, 19:24, 21:15
**profits** [1] - 11:21
**prohibited** [1] - 4:6
**prongs** [1] - 17:24
**prosecution** [2] - 10:19, 10:21
**prove** [1] - 22:7
**provide** [2] - 8:5, 8:16

**provided** [1] - 18:7
**provides** [1] - 21:24
**public** [1] - 15:8
**put** [5] - 7:22, 11:2, 13:8, 17:9, 20:11
**putting** [1] - 7:19

## Q

**questions** [4] - 3:12, 3:17, 4:7, 4:24
**quite** [1] - 9:21

## R

**Rad** [1] - 16:18
**rather** [1] - 7:21
**really** [3] - 8:18, 19:10, 21:7
**reason** [1] - 20:1
**recited** [1] - 18:23
**recognize** [1] - 5:20
**recommendations** [2] - 9:16, 9:22
**record** [1] - 7:2
**recording** [1] - 4:6
**recruiting** [1] - 12:1
**refer** [2] - 3:8, 13:22
**regard** [1] - 19:9
**regarding** [2] - 4:16, 12:12
**regularly** [1] - 11:25
**reject** [1] - 5:11
**relates** [2] - 4:13, 19:4
**relevant** [4] - 10:6, 15:7, 17:19, 21:14
**relied** [2] - 18:2, 20:16
**relies** [1] - 10:4
**relying** [1] - 17:12
**remarks** [1] - 4:22
**remind** [1] - 4:5
**Remote** [1] - 1:11
**remotely** [1] - 3:11
**repeatedly** [1] - 13:5
**reply** [3] - 17:22, 18:2, 19:7
**report** [2] - 9:22, 11:2
**Reporter** [1] - 22:24
**reports** [1] - 9:16
**require** [2] - 16:9, 18:8
**required** [4] - 5:5, 5:9, 13:1, 21:4
**requires** [3] - 12:18, 16:3, 18:16
**respect** [2] - 17:5, 17:7
**respond** [2] - 4:25, 18:11
**rest** [1] - 22:20
**result** [1] - 15:24

**resulted** [2] - 16:4, 17:3
**revenue** [1] - 19:22
**reviewed** [1] - 9:15
**rise** [1] - 5:24
**risks** [1] - 19:25
**ROBERT** [2] - 1:23, 2:3
**Robert** [2] - 2:17, 2:22
**ROCHE** [1] - 1:4
**Roche** [26] - 2:17, 2:18, 5:6, 6:9, 6:20, 6:22, 6:23, 7:8, 8:3, 8:16, 8:19, 8:20, 9:24, 10:3, 10:5, 10:8, 10:11, 10:20, 11:18, 11:19, 12:5, 12:11, 13:5, 20:6, 20:10, 20:11
**Roche's** [1] - 8:2
**rule** [1] - 12:8
**rules** [2] - 11:3, 14:4
**ruling** [1] - 22:11

## S

**Salazar** [1] - 12:5
**sat** [1] - 8:20
**SAUNDERS** [1] - 2:7
**Saunders** [1] - 2:24
**saw** [1] - 8:8
**search** [1] - 11:2
**SEC** [9] - 6:23, 7:1, 7:3, 15:2, 17:17, 19:10, 19:16, 19:21, 20:4
**second** [2] - 6:22, 13:24
**see** [4] - 3:21, 8:25, 9:3, 18:5
**selling** [1] - 12:10
**sense** [1] - 5:21
**sent** [2] - 6:14, 10:15
**set** [1] - 4:16
**shared** [1] - 10:17
**short** [1] - 5:8
**show** [2] - 16:6, 17:4
**showing** [2] - 16:3, 22:10
**shown** [2] - 16:12, 16:15
**silent** [1] - 8:20
**SILVER** [2] - 1:20, 2:15
**Silver** [1] - 2:16
**similar** [1] - 16:13
**similarly** [1] - 4:21
**simply** [11] - 4:22, 5:12, 6:6, 7:5, 10:7, 11:4, 11:8, 11:19,

11:22, 12:6, 12:21
**single** [1] - 18:17
**situation** [3] - 12:9, 13:9, 19:12
**six** [3] - 13:23, 20:3
**six-year** [1] - 20:3
**slide** [1] - 18:21
**slides** [2] - 3:8, 18:21
**snuck** [1] - 20:5
**sold** [3] - 8:4, 8:13, 21:14
**someone** [1] - 4:4
**sometimes** [1] - 3:23
**somewhat** [2] - 13:21, 21:22
**sophisticated** [1] - 21:11
**sort** [4] - 7:19, 8:25, 10:20, 12:4
**sorts** [1] - 8:9
**speaking** [2] - 3:22, 4:3
**specific** [1] - 21:18
**specifically** [4] - 6:24, 7:9, 9:15, 12:21
**specification** [2] - 10:18, 11:3
**spoken** [1] - 4:4
**squarely** [1] - 16:17
**standard** [2] - 5:9, 7:20
**standards** [3] - 13:7, 21:8, 22:8
**STARGATT** [1] - 2:3
**start** [4] - 3:13, 4:8, 14:12, 15:6
**starting** [1] - 14:2
**state** [1] - 21:5
**statement** [2] - 14:12, 14:14
**statements** [1] - 15:3
**STATES** [1] - 1:1
**States** [1] - 1:15
**statute** [1] - 20:3
**stenographic** [1] - 22:22
**still** [1] - 14:7
**stop** [3] - 3:17, 3:22, 3:24
**Street** [1] - 1:12
**subject** [2] - 10:24, 19:22
**subjective** [1] - 12:18
**submitted** [1] - 6:25
**successful** [1] - 12:11
**sued** [2] - 7:4, 7:25
**sufficient** [4] - 6:8, 12:7, 17:9, 22:10
**sufficiently** [3] - 9:4,

16:2, 17:11
**suit** [16] - 5:3, 6:15, 6:16, 6:18, 8:14, 9:12, 9:18, 10:16, 10:18, 16:25, 17:10, 17:13, 17:15, 20:15
**support** [5] - 6:17, 7:6, 14:13, 14:14, 14:23
**supposed** [1] - 7:12
**supposedly** [1] - 8:19
**Suprema** [1] - 18:20
**Supreme** [1] - 12:17
**surprising** [1] - 8:18
**sustain** [2] - 5:9, 8:17
**system** [1] - 3:15

## T

**talks** [1] - 11:11
**TAYLOR** [1] - 2:3
**Tech** [4] - 12:17, 12:25, 13:7, 18:15
**Tech.Bio** [1] - 16:18
**technology** [5] - 10:14, 12:3, 16:11, 17:8, 19:24
**Teleconference** [1] - 22:21
**telephone** [1] - 3:5
**tense** [1] - 14:17
**term** [1] - 9:21
**Texas** [1] - 12:6
**THE** [20] - 1:1, 1:2, 1:15, 2:13, 2:19, 3:1, 7:11, 8:24, 9:9, 13:11, 13:15, 14:5, 16:19, 18:10, 19:6, 19:13, 19:17, 20:21, 22:16, 22:19
**themselves** [2] - 7:1, 16:9
**third** [2] - 6:5, 15:11
**third-party** [1] - 15:11
**THOMAS** [1] - 2:6
**three** [3] - 4:23, 9:24, 17:8
**thrust** [1] - 21:2
**timing** [2] - 13:21, 21:22
**today** [4] - 4:22, 6:3, 6:8, 22:13
**together** [8] - 5:7, 5:24, 7:19, 7:22, 9:4, 9:18, 17:9, 20:11
**Tom** [2] - 2:23, 4:10
**topic** [1] - 4:2
**totality** [1] - 5:20
**transcript** [1] - 22:22
**trouble** [1] - 20:18
**true** [4] - 6:6, 6:8,

18:16, 22:22
**try** [1] - 4:25
**trying** [3] - 3:25, 9:9, 14:7
**turning** [1] - 5:14
**two** [3] - 3:9, 6:23, 12:21
**types** [1] - 5:15

## U

**U.S** [1] - 22:25
**ultimately** [1] - 22:6
**uncontested** [1] - 17:19
**under** [1] - 14:3
**UNITED** [1] - 1:1
**United** [1] - 1:15
**uses** [1] - 21:23
**utilizes** [1] - 16:10
**utilizing** [1] - 17:7

## V

**vague** [2] - 13:20, 21:22
**videos** [1] - 16:15
**visual** [1] - 3:21
**VRANA** [2] - 2:3, 2:21
**Vrana** [1] - 2:22

## W

**wait** [2] - 3:14
**web** [2] - 8:7, 8:8
**week** [1] - 22:20
**weeks** [2] - 8:23, 9:24
**well-known** [6] - 6:4, 6:6, 6:12, 6:21, 7:18, 8:19
**whole** [1] - 9:11
**willful** [9] - 4:13, 4:18, 12:15, 12:18, 13:7, 14:16, 18:12, 19:2, 22:7
**willfully** [1] - 14:18
**willfulness** [4] - 3:4, 4:21, 21:1, 21:5
**WILLKIE** [1] - 2:5
**Willkie** [2] - 2:24, 4:11
**WILMER** [1] - 1:22
**WilmerHale** [1] - 2:18
**Wilmington** [1] - 1:13
**word** [1] - 17:21
**worried** [2] - 15:10, 15:21
**wrote** [2] - 6:2, 9:25

## Y

**year** [1] - 20:3
**years** [4] - 10:2, 11:17, 12:10, 20:3
**YOUNG** [1] - 2:3
**Young** [1] - 2:22
**yourself** [1] - 4:4