# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TERATECH, CORP. d/b/a TERASON,<br><br>Plaintiff,<br><br>v.<br><br>MINDRAY BIO-MEDICAL ELECTRONICS CO. LTD. d/b/a MINDRAY GLOBAL and MINDRAY DS USA, Inc. d/b/a MINDRAY NORTH AMERICA,<br><br>Defendants. | C.A. No. 25-1149-MN<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

Dated:  February 3, 2026

Susan E. Morrison (#4690)
Grayson P. Sundermeir (#6517)
Taylor Reeves (#6900)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel: 302-652-5070
morrison@fr.com; sundermeir@fr.com;
reeves@fr.com

Frank E. Scherkenbach
Jeffrey Shneidman
Qiuyi Wu
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
(617) 542-5070
scherkenbach@fr.com; shneidman@fr.com;
qwu@fr.com

Jeremy T. Saks
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
(212) 765-5070
saks@fr.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     TERATECH'S WILLFUL INFRINGEMENT CLAIMS SHOULD BE DISMISSED ....... 1

        A.      The Alleged "Constellation of Facts" in the Complaint is Insufficient to
                Plead Willful Infringement ................................................................................ 1

        B.      Teratech Failed to Sufficiently Allege Willful Blindness ........................................ 5

III.    TERATECH'S DIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED .......... 7

        A.      Teratech's Allegations are Insufficient Under *Iqbal* and *Twombly* Because
                They Fail to Plausibly Plead Infringement of "Handheld" Devices ........................ 7

        B.      Claim Construction is Not Necessary to Resolve Teratech's Defective
                Complaint ...................................................................................................... 8

IV.     CONCLUSION ................................................................................................. 10

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aperture Net LLC v. Cambium Networks, Inc.*,
No. CV 21-298-RGA, 2022 WL 605740 (D. Del. Feb. 1, 2022) ...........................................2

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ....................................................................................6, 9, 10

*Cerebrum Sensor Techs., Inc., v. Revvo Techs., Inc.*,
No. CV 24-245-JLH-SRF, 2025 WL 72110 (D. Del. Jan. 10, 2025) ......................................2

*Earin AB v. Skullcandy, Inc.*,
No. CV 24-275-RGA, 2024 WL 4791588 (D. Del. Nov. 14, 2024)..........................................8

*EON Corp. IP Holdings LLC v. FLO TV Inc.*,
802 F. Supp. 2d 527 (D. Del. 2011)...........................................................................................3

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)...............................................................................................................5, 6

*Hills Point Indus. LLC v. Just Fur Love LLC*,
No. CV 22-1256-GBW, 2023 WL 8804046 (D. Del. Dec. 20, 2023) .......................................5

*iFit Inc. v. Peloton Interactive, Inc.*,
No. CV 21-507-RGA, 2022 WL 609605 (D. Del. Jan. 28, 2022) ............................................2

*InVue Sec. Prods. Inc. v. Mobile Tech, Inc.*,
No. 3:19-cv-407-SI, 2019 WL 5295464 (D. Or. Oct. 18, 2019) .........................................3, 4

*MONEC Holding AG v. Motorola Mobility, Inc.*,
897 F. Supp. 2d 225 (D. Del. 2012)...................................................................................5, 6, 7

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
No. CV 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017)........................7, 8, 10

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)................................................................................................8

*Roche Diabetes Care, Inc. v. Insulet Corp.*,
No. 1-20:CV-00825-MN, D.I. 1 ...........................................................................................3, 4

*Software Research, Inc. v. Dynatrace LLC*,
316 F. Supp. 3d 1112 (N.D. Cal. 2018) ...................................................................................4

*State Indus., Inc. v. A.O. Smith Corp.*,
751 F.2d 1226 (Fed. Cir. 1985)................................................................................................2

*UTTO Inc. v. Metrotech Corp.*,
  119 F.4th 984 (Fed. Cir. 2024) ..............................................................................................9

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
  No. C 11-06638 RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012) ........................................6

**Other Authorities**

Rule 8 ..........................................................................................................................................5

Rule 12(b)(6)................................................................................................................................3

## I.    INTRODUCTION

Teratech's opposition repeats the speculation and conclusory assertions that are throughout its complaint, confirming that its complaint fails to state a claim.  As to willfulness, Teratech fails to identify a single specific fact to show Mindray had actual knowledge of the Asserted Patents.  Its vague allegations that Mindray was familiar with Teratech's patent portfolio are unsupported by facts, and instead rest on an OEM relationship that long predated issuance of the Asserted Patents, a shared industry, and allegations about Mindray's FTO searches and patent prosecution that are unrelated to the Asserted Patents.  Teratech's allegations of direct infringement regarding "handheld" portable ultrasound devices are similarly implausible.  Mindray's statement that the TEX main unit can be disassembled from its cart is not an admission that the device is handheld—disassembly deconstructs the machine rather than demonstrates handheld use.  Likewise, the fact that the TE7 can be moved among mounting racks confirms that it is not handheld under any reasonable interpretation of that term.  Counts I, II, IX, and X rest on speculation, are not plausible, and should be dismissed.

## II.    TERATECH'S WILLFUL INFRINGEMENT CLAIMS SHOULD BE DISMISSED

### A.    The Alleged "Constellation of Facts" in the Complaint is Insufficient to Plead Willful Infringement

Teratech concedes that each of the alleged "facts" in its "constellation" has been rejected by courts in this district and elsewhere as insufficient to establish actual knowledge.  (*See* D.I. 17 at 10 (string citing cases holding that speculation and inferences cannot substitute for actual knowledge)).  Teratech argues, however, that because it combines multiple insufficient allegations, the Court should depart from settled law and allow its deficient claim to proceed.  Teratech's "constellation of facts," however, is nothing more than speculation and does not show Mindray had actual knowledge of the Asserted Patents.  Numerosity is not a substitute for merit.

The law is clear that willful infringement requires that Mindray had actual knowledge of the Asserted Patents. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe *a patent,* the patent must exist and one must have knowledge of it"). Yet none of Teratech's allegations demonstrate, or even allow for the inference, that Mindray had actual knowledge of the patents asserted here. Each of the speculative "facts" in Teratech's complaint, which are repeated in its answering brief, has been found to be insufficient to show knowledge as a matter of law. (D.I. 17 at 10). The parties' OEM relationship occurred well before the Asserted Patents issued.[1] *iFit Inc. v. Peloton Interactive, Inc.*, No. CV 21-507-RGA, 2022 WL 609605, *1–2 (D. Del. Jan. 28, 2022). The parties' shared industry is also not sufficient to infer knowledge of the Asserted Patents. *State Indus., Inc.*, 751 F.2d at 1236. Mindray's prior citation during prosecution of Teratech patents other than the Asserted Patents is similarly not enough to infer actual knowledge of the Asserted Patents. *Cerebrum Sensor Techs., Inc., v. Revvo Techs., Inc.*, No. CV 24-245-JLH-SRF, 2025 WL 72110, at *3 (D. Del. Jan. 10, 2025). And Mindray's generalized statements regarding patent monitoring and freedom to operate searches are likewise too attenuated to assert actual knowledge. *Aperture Net LLC v. Cambium Networks, Inc.*, No. CV 21-298-RGA, 2022 WL 605740, at *4 (D. Del. Feb. 1, 2022). Many companies perform FTO searches during product development. Under Teratech's logic, any such company could be held liable for willful infringement of patents unrelated to that

---

[1] To the extent that Teratech tries to argue that the figures in patent applications published within a year of the OEM relationship are "valid patent rights," courts have expressly recognized that patent applications are insufficient to show actual knowledge of issued patents. *State Indus.*, 751 F.2d at 1236  (Recognizing that applications are not guarantees that a patent will be issued and "[w]hat the scope of claims in patents that do issue will be is something totally unforeseeable."). Furthermore, Teratech only makes this argument as it relates to the '073 specification, as all of the remaining Asserted Patents have priority dates well after 2006. (*See* D.I. 1, ¶¶ 23, 25, 27, 29).

search. That speculative leap that is unsupported by any evidence here, and the Court need not accept it.

Teratech's speculation does not substitute for a plausible allegation of fact. Teratech has cited no case holding that a willful infringement claim survives a Rule 12(b)(6) motion based on multiple speculative allegations, without more. Instead, the cases Teratech cites involve pleadings that alleged far clearer factual connections between the defendant and the asserted patents than are alleged here. In *InVue*, after stating that the motion to dismiss was a "close call," the court found that InVue's thin willfulness allegations survived because of ongoing, contentious litigation between the parties. *InVue Sec. Prods. Inc. v. Mobile Tech, Inc.,* No. 3:19-cv-407-SI, 2019 WL 5295464, at *5 (D. Or. Oct. 18, 2019) ("InVue alleges that the litigation [between the parties] has been 'continuous'— the parties have been involved in ongoing litigation in multiple districts for almost four years."). The court reasoned this type of litigation history "ties MTI to InVue more closely than a licensing agreement between InVue and a third party or an allegation that MTI monitored intellectual property in the industry generally," both of which had been found insufficient to show willfulness in prior cases. *Id.* at *4–*5 (citing *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527 (D. Del. 2011)). Notably, there is no history of litigation between the parties here that would compel an inference that Mindray was or would be monitoring Teratech more than any other competitor, or that Mindray and Teratech would be closely tied like the parties in *InVue*.

In *Roche Diabetes Care, Inc. v. Insulet Corp.*, the plaintiff made allegations well beyond those made here by Teratech. (*See* D.I. 17, Ex. A at 21:2–19). Roche Diabetes alleged facts that included (1) a competing product that was marked with the asserted patent, (2) that the asserted patent was well known in the industry (being cited by at least 20 patents in the same field, *Roche*

3

*Diabetes Care, Inc. v. Insulet Corp.*, No. 1-20:CV-00825-MN, D.I. 1, ¶ 11 (D. Del. June 17, 2020)), (3) that defendant publicly stated that "it was aware of patents and applications owned by competitors that covered insulin infusion and related devices," like the asserted patent, (4) that defendant publicly acknowledged "that third parties may have had patents on which Insulet's products infringed," and (5) that Insulet "expected to be increasingly subject[ed] to [] infringement claims." *Id.*, ¶ 11. (*See also* D.I. 17, Ex. A at 21:20-22:5). In both *Invue* and *Roche*, the plaintiffs relied on specific factual allegations to support their willful infringement claims, such as nearly five years of continuous litigation between the parties, clear marking of the accused products with the asserted patent, and public statements by the defendant acknowledging awareness of patents covering the relevant technology and anticipating infringement claims related to those patents. And even with these allegations, both courts recognized that whether the claim survived a 12(b)(6) motion was a "close call." (D.I. 17, Ex. A at 21:6–7) ("I have to say that this motion is a really close call[.]"); *Invue*, 2019 WL 5295464, at *5 ("[T]he motion to dismiss presents a close call"). This case, which lacks concrete allegations that could be found to support a willful infringement claim, is not a close call, and Teratech's willfulness allegations should be dismissed.

This case presents facts closer to a case that *InVue* distinguished itself from: *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112 (N.D. Cal. 2018). In *Dynatrace*, the court found that the plaintiff failed to plausibly allege pre-suit knowledge of the asserted patent even considering, in combination, the parties' status as competitors, letters discussing plaintiff's patent portfolio sent from plaintiff to three of defendant's predecessors-in-interest, a mutual non-disclosure agreement between plaintiff and one of defendant's predecessors-in-interest, and awareness of various patent applications filed by plaintiff. *Id.* at 1133–35.

4

As the cases cited above make clear, none of the individual "facts" Teratech identifies—whether considered in isolation or together—is legally sufficient to plead willfulness. For these reasons, Teratech failed to plead that Mindray had knowledge of the Asserted Patents and its allegations of willful infringement should be dismissed.[2]

### B.    Teratech Failed to Sufficiently Allege Willful Blindness

Teratech's willful blindness arguments fail as a matter of law. To plead willful blindness, Teratech must identify affirmative actions taken by Mindray to avoid learning about the Asserted Patents or its potential infringement. Teratech failed to plead any such affirmative action, and instead, Teratech's willful blindness allegations are built on the same deficient speculation as its allegations of actual knowledge.

Teratech has not pleaded facts necessary to support a claim of willful blindness. "A willfully blind defendant must (1) "subjectively believe that there is a high probability that a fact exists," and (2) "take deliberate actions to avoid learning of that fact." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769–70 (2011). At a minimum, a plausible willful blindness allegation must say what affirmative actions the defendant allegedly took to avoid knowledge. *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 230 (D. Del. 2012) ("A complaint that fails to identify any affirmative actions taken by the defendant to avoid gaining actual knowledge of the patent-in-suit is insufficient to state a claim for relief based on the willful blindness theory under the pleading standards set forth in Rule 8, *Twombly,* and *Iqbal.*");

---

[2] Teratech asserts that "Mindray does not allege that Teratech has not pleaded sufficient facts to infer Mindray's knowledge of infringement of the Asserted Patents." (D.I. 17 at 8). Not so. Mindray argues that Teratech failed to even plead knowledge of the Asserted Patents as required to state a claim willful infringement. *Hills Point Indus. LLC v. Just Fur Love LLC*, No. CV 22-1256-GBW, 2023 WL 8804046, at *2 (D. Del. Dec. 20, 2023). It directly follows that Teratech has not pleaded facts sufficient to infer knowledge of infringement of those patents. After all, a party cannot knowingly infringe a patent it does not know exists.

*see also Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at *6 (N.D. Cal. May 18, 2012) (dismissing claim under willful blindness theory because "VSi has neglected to identify any affirmative actions taken by TIBCO to avoid gaining actual knowledge of the [asserted] patent."). But Teratech does not allege *any* facts that support an allegation that Mindray deliberately avoided knowledge of the Asserted Patents. (*See* D.I. 12 at 14–15). That is insufficient as a matter of law. *MONEC*, 897 F. Supp. 2d at 230.

Instead, like its allegations regarding actual knowledge of the Asserted Patents, Teratech's allegations of willful blindness are nothing more than conclusory statements based on speculative inferences, which are insufficient. To support its willful blindness allegations, Teratech (1) simply reiterates allegations from its complaint—again invoking an OEM relationship that ended in 2006, Mindray's general awareness of certain unasserted Teratech patents, and Mindray's freedom-to-operate and prior-art searches, (D.I. 1, ¶¶ 52–55), and (2) adds "to the extent that Mindray somehow avoided actual knowledge of the Asserted Patents, it was through active avoidance and willful blindness[.]" (D.I. 1, ¶ 56). Said another way, Teratech argues that if it failed to make a showing of actual knowledge, the Court should infer that Mindray must have been willfully blind. That is not enough to support a claim of willful blindness, and Teratech cites no case that says otherwise.

Teratech's citation to *Motiva Pats., LLC v. Sony Corp.*, is inapposite. There, the Court found that "Motiva alleges a specific policy which gives rise to willful blindness" which is that "HTC 'has a policy or practice of not reviewing the patents of others.'" 408 F. Supp. 3d 819, 833 (E.D. Tex. 2019) (internal citation omitted). The court found that "[c]reating a policy prohibiting review of patents is a specific kind of 'deliberate action[ ] to avoid learning' of potential infringement." *Id.* (quoting *Global-Tech*, 563 U.S. at 768). Teratech failed to allege that

Mindray has a similar policy wherein Mindray is taking deliberate action to avoid learning of patents or potential infringement. In fact, Teratech pleads the opposite, alleging that "Mindray had a corporate policy, as of at least the year 2000, of affirmatively evaluating competitors' patent portfolios and performing freedom to operate searches." (D.I. 1, ¶ 55).

Teratech's reliance on *Suprema* is similarly misplaced. In *Suprema, Inc. v. Int'l Trade Comm'n*, which was not decided on a motion to dismiss, the Commission found that Suprema had been willfully blind because there was actual evidence of Suprema's market analysis of competitors' patent portfolios during the development of its product, as well as evidence of Suprema's actions to avoid knowledge of potential infringement. 626 F. App'x 273, 280–82 (Fed. Cir. 2015). The Federal Circuit made clear that the "holding is limited to the facts in the case before us" and "[n]one of the facts upon which the Commission relied, in isolation, would support a finding of willful blindness." *Id.* at 282 (clarifying that *Suprema* does not stand for the notion that it "falls on a technology company to identify 'all patents that are potentially implicated' by customers' potential infringement of patents.").

The multi-layered speculation in Teratech's Complaint falls far short of the minimum pleading requirements for willful infringement and should therefore be dismissed.

## III.   TERATECH'S DIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED

### A.   Teratech's Allegations are Insufficient Under *Iqbal* and *Twombly* Because They Fail to Plausibly Plead Infringement of "Handheld" Devices

Teratech's infringement allegations regarding the "handheld" limitations in the '699 and '073 patents fail because they do nothing more than parrot the claim language—both in the complaint and in the accompanying claim charts—without pleading affirmative facts that make infringement plausible. Under *Iqbal* and *Twombly*, a plaintiff must allege facts, not conclusions, that nudge its claim across the line from conceivable to plausible. *N. Star Innovations, Inc. v.*

7

*Micron Tech., Inc.*, No. CV 17-506-LPS-CJB, 2017 WL 5501489, at \*2 (D. Del. Nov. 16, 2017). Reproducing the claim elements and asserting, without explanation, that the accused products satisfy those elements does not satisfy that standard. *See id.* Teratech's allegations do precisely what *Iqbal* and *Twombly* forbid: they assume infringement rather than plausibly allege it.

Teratech's cited authority does not support a different result. The cases Teratech relies on involve complaints that included concrete, product-specific allegations explaining why the accused products plausibly met the claim limitations. In *Nalco Co.*, the plaintiff adequately pleaded that the bromide compound was "injected" into a "flue gas" but the parties disagreed on "where 'flue gas' may be located within the power plant and what limitations are appropriate on where 'injecting' may occur." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). *See also Earin AB v. Skullcandy, Inc.*, No. CV 24-275-RGA, 2024 WL 4791588, at \*3 (D. Del. Nov. 14, 2024) (explaining that even if the court accepted defendant's claim construction, the complaint still plausibly alleges infringement). Here, by contrast, as Mindray explained in its opening brief, Teratech offers only conclusory assertions that track the claim language. (*See* D.I. 12 at 15–20). That is insufficient as a matter of law, and dismissal is warranted on that basis alone.

  **B.**  **Claim Construction is Not Necessary to Resolve Teratech's Defective Complaint**

Claim construction is not required to resolve Teratech's deficient pleading. The asserted claims themselves make clear that "handheld" describes the overall structure of the claimed invention, not an incidental or optional feature. In the asserted '073 patent, that term appears not only in the preamble—which frames the invention as a whole—but also in the body of the claim, reinforcing that "handheld" is a substantive limitation. (D.I. 1, ¶ 22).

There is nothing technical or ambiguous about the term "handheld." Even given its "broadest possible construction" at the motion to dismiss stage, the meaning of "handheld" is "so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed." *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 994 (Fed. Cir. 2024). Contrary to Teratech's allegations, Mindray is not seeking a construction of that term. To decide this motion, the Court need only apply the ordinary meaning of the word in English. The accused products—large systems mounted on carts or fixed mounts—cannot plausibly fall within the plain meaning of the term "handheld." Teratech argues because a unit is portable, that means it must be handheld, (D.I. 17 at 15), but that flawed reasoning goes well beyond even the broadest possible construction. Construing the term would add nothing to the analysis and would only delay resolution of a straightforward issue, wasting judicial time and resources.

Teratech's arguments to the contrary are distractions. With respect to the TE7, Teratech suggests that because the main unit can be moved from a cart to a mount, it is somehow "handheld." That misses the point. The claims require a handheld device, not a device that can, at some point, be moved by someone using their hands. The possibility that a component can be lifted or repositioned does not transform a cart-based or mounted system into a handheld system.

The problem is even more stark for the TEX. Teratech has not alleged a single fact—either in the complaint or in the attached claim charts—showing that the TEX is handheld. Instead, Teratech's own claim charts present a contradiction by recognizing that the main unit of the TEX device, with its significantly large size and weight, has no battery and thus no functionality unless mounted to a cart. (D.I. 1, Ex. H at 4–5). Allegations rife with inconsistencies and implausibility support a dismissal of infringement claims. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353–54 (Fed. Cir. 2021) ("Where, as here, the factual

9

allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim." (emphasis in original)).  In *Bot M8*, a case cited by Teratech, (D.I. 17 at 12), the Federal Circuit affirmed the district court's dismissal of infringement claims for two of the four asserted patents, finding that some of the allegations were "not even possible, much less plausible" and that ultimately "Bot M8's allegations are conclusory, merely track the claim language, and do not plausibly allege" infringement."  *Id.* at 1354–55.

Next, Teratech asserts that the term "handheld" does not necessarily require functionality. (D.I. 17 at 15–16).  But the claims require a "handheld" device that is capable of operation—for example claim 41 of the '073 patent requires a "handheld portable processing unit" that "ha[s] an integrated touch screen display *that displays an ultrasound image.*"  (D.I. 1, Ex. A, cl. 41). Teratech sidesteps that logical flaw, relying instead on the repetition of claim language in its charts and its conclusory assertions of infringement as enough.  But that kind of conclusory pleading is precisely what *Iqbal* and *Twombly* prohibit.  *N. Star Innovations*, 2017 WL 5501489, at *1 ("A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that 'entitlement with its facts'") (internal citation omitted)).

IV.   **CONCLUSION**

For the reasons explained above and in its Opening Brief, Mindray respectfully requests that the Court dismiss Teratech's willful infringement allegations as well as Counts I, II, IX, and X of the Complaint.

Dated: February 3, 2026

**FISH & RICHARDSON P.C.**

*/s/ Susan E. Morrison*

Susan E. Morrison (#4690)
Grayson P. Sundermeir (#6517)
Taylor Reeves (#6900)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel: 302-652-5070
smorrison@fr.com; sundermeir@fr.com,
reeves@fr.com

Frank E. Scherkenbach
Jeffrey Shneidman
Qiuyi Wu
FISH & RICHARDSON P.C.
One Marina Park Drive
Suite 1700
Boston, MA 02210
(617) 542-5070
scherkenbach@fr.com; shneidman@fr.com;
qwu@fr.com

Jeremy T. Saks
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
(212) 765-5070
saks@fr.com

*Attorneys for Defendants*

11